

| *Partners* | *Founding Partners* | *Associates* | *Of Counsel* |
|---|---|---|---|
| Daniel Ebenstein | Morton Amster (*1927 - 2019*) | Benjamin Charkow | Philip H. Gottfried |
| Neil M. Zipkin | Jesse Rothstein (*1934 - 2003*) | Suzue Fujimori | |
| Anthony F. Lo Cicero | | Hajime Sakai, Ph.D. | |
| Kenneth P. George | *Senior Counsel* | David P. Goldberg | |
| Chester Rothstein | Marion P. Metelski | Sandra A. Hudak | |
| Charles R. Macedo | Alan D. Miller, Ph.D. | Tuvia Rotberg | |
| Douglas A. Miro | Marc J. Jason | Dexter Chang | |
| Brian A. Comack | Richard S. Mandaro | Keith J. Barkaus | |
| Max Vern | Matthieu Hausig | Michael R. Jones | |
| Holly Pekowsky | Brian Amos, Ph.D. | Christopher Lisiewski | |
| Benjamin M. Halpern★ | | Albert J. Boardman | |
| Mark Berkowitz | | | ★ Not admitted in New York |
| Charles P. LaPolla | | | |

90 Park Avenue
New York NY 10016

Main    212 336 8000
Fax     212 336 8001
Web     www.arelaw.com

August 26, 2020

Mark Berkowitz
Direct 212 336 8063
E–mail mberkowitz@arelaw.com

Via ECF

The Honorable Cheryl L. Pollak, U.S.M.J.
United States District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  *Energizer Brands, LLC v. My Battery Supplier, LLC*,
>      Civil Action No. 1:19-cv-06486-AMD-CLP
>      Defendant's Motion to Compel Discovery

Dear Judge Pollak:

We represent the Defendant, My Battery Supplier ("MBS"), in the above-referenced action.  In response to MBS's first sets of document requests and interrogatories, served on March 25, 2020, Plaintiff Energizer Brands, LLC ("Energizer") has refused to produce documents and information critical to Energizer's claims and MBS's defenses.  The Parties have met and conferred, but no resolution was reached. Therefore, pursuant to your Honor's Individual Rules and Local Civil Rule 37.3, MBS respectfully requests an order compelling Energizer to produce the information and documents discussed below.[1]

## I.    Background

As detailed in MBS's pending Motion to Dismiss (ECF No. 34), this case concerns Energizer's efforts to frustrate MBS's legitimate resale of Energizer batteries on e-commerce platforms like Amazon.  Here, after more than a decade of silence, Energizer asserts that MBS's resale of Energizer-brand batteries that have been repackaged by MBS constitutes a violation of the Lanham Act. But, under the "first sale doctrine," the resale of genuine trademarked goods does not constitute trademark infringement, even if made without the trademark owner's consent. Thus, in order to state a claim, Energizer must show that the batteries sold by MBS are *"materially different" than those authorized for sale by Energizer*. *Helene Curtis, Inc. v. Nat'l Wholesale Liquidators*, 890 F. Supp. 152, 158 (E.D.N.Y. 1995).

---

[1] For the Court's reference, Exhibit A hereto includes verbatim reproductions, by category, of the document requests ("RFPs") and interrogatories ("ROGs") addressed by the present motion. Exhibits B and C include copies of Energizer's objections and responses to these requests.

Hon. Cheryl L. Pollak, U.S.M.J.                    2                         August 26, 2020

**II.      Energizer Must Disclose the Full Scope of Its Products and Packaging**

Energizer's claims in this action rely entirely on its (unsupported) allegations that batteries that have been repackaged by MBS "are materially different from genuine products sold by Energizer and its Authorized Resellers."  (ECF No. 29, "Compl." ¶¶11, 43; ECF No. 42 at 3.)  The batteries at issue are sold by Energizer in bulk *to be packaged by Energizer's customers for resale*. However, Energizer has refused to identify its direct customers, including any "Authorized Resellers."  Energizer also alleges that batteries marked "Not for Retail Trade" "are *only sold . . . to OEMs (Original Equipment Manufacturers) who insert the batteries into equipment then being sold to consumers*" and "are not authorized to be sold directly to consumers." (Compl. ¶32.) But Energizer refuses to identify to which customers it *actually* sells these batteries.  Absent this information, Energizer's case should not be allowed to proceed.

**Category #1 (Energizer's Customers, Sales and Product Packaging)**: In response to RFP Nos. 9–10, 13–17 and 27 and ROG Nos. 1–2, Energizer has refused to identify its direct customers (including the so-called "Authorized Resellers" central to Energizer's pleadings), as well as other documents concerning the alleged "genuine Energizer packaging" used by such resellers.  Energizer itself admits that the information that it has agreed to produce—"sample" SKU lists and "representative" agreements—will not disclose the packaging of genuine Energizer products *sold by its customers, including the "Authorized Resellers."*  For example, despite alleging that the Energizer batteries sold by MBS in "plain cardboard boxes or clear plastic bags" are "materially different" from "genuine" products (Compl. ¶5.b.), Energizer concedes that it *does not know* whether its Authorized Resellers sell Energizer batteries in such packaging. (Ex. D, Resp. to RFAs 19, 21).  Nor does Energizer know whether its "Authorized Resellers" sell Energizer batteries to retail customers without "consumer safety information," "handling instructions," "warning copy," or "warranty copy." (*Compare* Compl. ¶¶5.c., 32, 48, *with* Ex. D, Resp. to RFAs 26, 29, 32, 35; *see also* Resp. to RFAs 2, 4, 6, 8, 13, 15, 17 (whether the Authorized Resellers have, *inter alia*, "self-packaged Energizer batteries" "is not within Energizer's possession, custody, and control")). *Accordingly, Energizer must disclose, and MBS must be able to take discovery from, Energizer's direct (i.e., "authorized") customers.*

Energizer's direct customers and sales records are also relevant to Energizer's assertions that certain products are sold only in specific channels. (*See* Compl. ¶¶5.e., 32).  For example, RFP Nos. 9 and 10 request documents sufficient to show the actual sales channels of OEM and bulk-packaged Energizer Products. Thus, as the information requested is critical to multiple relevant issues, is plainly in Energizer's sole possession, and there is no plausible burden on Energizer in producing it, MBS is entitled to the discovery requested in Category #1.

**Category #2 (Packaging of Combination Battery Products and Non-Energizer Products)**: In response to RFP Nos. 1, 2, 7 and 8, Energizer refuses to identify and provide representative packaging of (i) its combination products that *include* Energizer-brand batteries (e.g., battery chargers, flashlights); and (ii) bulk-packaged batteries bearing marks other than the Energizer Marks. The packaging of these product types is relevant to Energizer's "material differences" theory. Any differences between the packaging of these product types as compared to the accused products speaks to whether any alleged differences are "material" to consumers.

**Category #3 (Marketing Studies and Customer Base of Energizer Products)**: In response to RFPs 18, 24, 25, and 26—which seek marketing plans of Energizer Products, as well

Hon. Cheryl L. Pollak, U.S.M.J.                    3                    August 26, 2020

as their intended channels of trade and retail customer base—Energizer feigns ignorance of the relevance of such information. These documents are relevant to Energizer's allegations that: (i) certain Energizer batteries (i.e., marked "Not for Retail Trade") "are not authorized to be sold directly to consumers" (Compl. ¶32); (ii) consumers have certain expectations regarding "Genuine Energizer Battery Products" (*id.* ¶¶17, 46, 65); and (iii) the purported differences between Energizer batteries sold by MBS and Energizer are "material" (*id*. ¶11). MBS has offered to work with Energizer to minimize any purported (but unarticulated) burden, to no avail.

**III.     Energizer Must Disclose Information Relevant to Its Delay and Acquiescence**

**Category #4 (Energizer's Knowledge of MBS)**: In response to RFP Nos. 11–12, 19–20, and 23 and ROG No. 3, Energizer has refused to comply with its discovery obligations regarding Energizer's knowledge of MBS's sale of Energizer Products.  This information is relevant to MBS's laches, estoppel, and acquiescence defenses, as well as Energizer's motivation for bringing this action. For example, Energizer engaged with market researchers to study the sale of Energizer products on e-commerce platforms and, as a result, was aware of MBS before last fall. (*See* Ex. E, MBS's Resp. to ROG No. 8). Yet, during the Parties' meet and confer, Energizer falsely represented that it was not aware of, and would not conduct further investigations regarding, such research studies. (Ex. F, Tr. 29:5–8 ("We have no reasonable basis to believe that there's anything that exists on this other than . . . what came up in fall of last year.")). Energizer should be compelled to conduct a reasonable search for and produce the requested information.

**Category #5 (Energizer's Enforcement Efforts)**: Similarly, in response to RFP Nos. 28–29 and ROG Nos. 4–5, Energizer refuses to produce documents concerning Energizer's enforcement of the Energizer Marks, or provide additional information regarding Energizer's knowledge of sales of OEM and bulk-packaged batteries on online marketplaces. Contrary to Energizer's objections, this information is relevant because it directly relates to Energizer's ability to assert rights in the asserted marks. Energizer should be compelled to respond.

**IV.     Energizer Should Be Compelled to Conduct a Reasonable Investigation**

As a global issue, Energizer takes the position that its only discovery obligation in this case is limited to its "identification of the conduct of Defendant underlying this lawsuit." (*See* Ex. B, Resp. to RFP Nos. 11, 19, 23). Energizer also disingenuously asserts that it cannot respond to MBS's discovery because it has "more than 6,500 employees," and puts the onus on ***MBS to identify Energizer employees with responsive information.*** (*See* Ex. F, Tr. 28:23–29:8, 31:6–13). Following Energizer's logic, every large corporation would be exempt from discovery.

Energizer has also stated that, even if MBS divines the right personnel, Energizer will simply allow the employees to engage in self-collection of documents and e-mails. (*See* Ex. G, Tr. 11:10–13 ("It's essentially a self-select. Like, I know where that document is . . . and I'm going to go get it.")).  A global company like Energizer cannot reasonably believe that this is an acceptable discovery practice. *See, e.g.*, *Claredi Corp. v. SeeBeyond Tech. Corp.*, No. 4-04-CV-01304, 2010 U.S. Dist. LEXIS 153559, at *8–9 (E.D. Mo. Mar. 8, 2010) ("[Custodian self-collection] is rarely a reasonable practice to be applied for the key custodians . . . .").

*     *     *

For these reasons, MBS respectfully requests that Energizer be compelled to produce documents and interrogatory responses as discussed above.

Hon. Cheryl L. Pollak, U.S.M.J.                    4                              August 26, 2020

Respectfully submitted,

AMSTER, ROTHSTEIN & EBENSTEIN LLP

*s/ Mark Berkowitz*

Mark Berkowitz

cc: All Counsel of Record (via ECF)