# Exhibit B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**


-------------------------------------------------X
ENERGIZER BRANDS, LLC,

                         Plaintiff,              Civil Action No.  No. 19-CV-6486-AMD-CLP

        v.

MY BATTERY SUPPLIER, LLC,

                      Defendant.

-------------------------------------------- X

### ENERGIZER BRANDS, LLC'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF DOCUMENT REQUESTS

      Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Energizer Brands, LLC ("Energizer" or "Plaintiff") hereby provides its Supplemental Objections and Responses ("Supplemental Responses") to the First Set of Document Requests served by Defendant My Battery Supplier, LLC ("MBS" or "Defendant") (the "Requests").  **These Supplemental Responses contain the full text of Energizer's initial objections and responses; all supplemental objections and responses are clearly noted herein as a "SUPPLEMENTAL OBJECTION AND/OR RESPONSE."**

      Energizer responds to the Requests consistent with the obligations set forth in the Federal Rules of Civil Procedure ("Federal Rules") and the Local Rules of the Eastern District of New York ("Local Rules"), notwithstanding any requests in the Requests that purport to impose obligations different therefrom.  In responding to the Requests, Energizer has assigned to each word its everyday meaning and has construed the language of each Request in light of the scope of discovery permitted by the Federal and Local Rules.

Energizer's search for information and documents relevant to issues in this action is continuing. Energizer's Supplemental Responses to Defendant's Requests are based only upon such information that is available to Energizer at the time of this response. Further investigation in this action may disclose additional information or documents that are requested by Defendant or that bear on Energizer's objections. Energizer reserves the right to modify or supplement any and all of its initial objections and responses, as well as its Supplemental Responses, to Defendant's Requests as additional information or documents are obtained or become available or known to Energizer.

The provision of any documents by Energizer, and particularly the provision of documents that may be confidential or proprietary in nature or that otherwise constitutes Energizer's protected commercial, financial, competitively sensitive, and/or trade secret information, is expressly contingent upon, and subject to, the Court's entry of an appropriate protective order to protect the sensitive nature of any such information.

All evidentiary objections, including objections as to relevance, materiality, and admissibility, and any and all objections on the basis of work-product doctrine and attorney-client privilege, are expressly reserved.

## OBJECTIONS TO DEFINITIONS

Energizer objects as follows to the Definitions set forth by Defendant in the Requests:

1.     Energizer objects to the definition of "Energizer Products," which Defendant defines as "any item or product marketed or sold under the Energizer marks." Energizer offers for sale and sells a variety of products under the Energizer marks, including lighting products and various automotive products. The only products at issue in this case, however, are Energizer-brand batteries. There is therefore no justification for defining the scope of "Energizer Products" beyond that. Moreover, in response to Energizer's discovery requests to Defendant

seeking information and documents related to Energizer-brand batteries, Defendant has objected and argues that it should only have to produce discovery related to an even more limited scope of products, specifically only Energizer "OEM" or "bulk-packaged batteries" that have been repackaged.  *See, e.g.*, Defendant's Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories and First Set of Requests for Documents.  Defendant's attempt to define "Energizer Products" in a way that far exceeds both the scope of products at issue and the scope of Defendant's own objections is unjustified.  Consistent with the Federal and Local Rules, Energizer will respond herein to the extent of the scope that it believes is reasonable, specifically Energizer-brand batteries.

**SUPPLEMENTAL OBJECTION:**  During the parties' June 22nd Meet & Confer, MBS proposed narrowing the definition of "Energizer Products" from including every single product sold under the Energizer Mark to all products that "include[] batteries marketed or sold under the Energizer Marks."  *See* June 30, 2020 Letter, at 1.  MBS articulated that it believes that products sold under the Energizer Mark — such as lighting products — are relevant if the packages also contain Energizer Mark batteries to be used with the product.  Energizer maintains that such products are irrelevant to the claims and defenses in this action, compiling records on such out-of-scope product lines would be unduly burdensome, and MBS's proposed definition of "Energizer Products" is accordingly disproportional to the needs of the case.  Energizer will respond to the Requests as previously stated — with respect to Energizer-brand batteries.

2.      Energizer objects to the definition of "OEM Batteries" as vague, ambiguous, and inconsistent with Energizer's actual product offerings.  Defendant defines "OEM Batteries" ("OEM" meaning "Original Equipment Manufacturer") as "any battery bearing one or more Energizer Marks and labelled 'Not for Retail Trade' or containing a similar designation."  Not all

batteries sold to Original Equipment Manufacturers by Energizer are marked "Not for Retail Trade" and not all batteries marked "Not for Retail Trade" are sold only to Original Equipment Manufacturers.  The categorizations of batteries that Defendant has contrived are inconsistent with Energizer's business and, as such, it is not clear to Energizer what Defendant is seeking through use of this defined term.  Is Defendant seeking discovery regarding batteries sold by Energizer to Original Equipment Manufacturers?  Or discovery regarding batteries marked "Not for Retail Trade"?  In either case, Energizer does not maintain records categorized by such buckets.  But in any event, as drafted, this definition does not reasonably identify the discovery sought.  Energizer accordingly cannot respond to any Interrogatories turning on this definition.

**SUPPLEMENTAL OBJECTION:**  As explained above and as discussed during the parties' May 21, 2020 Meet & Confer, MBS's definitions for "retail," "bulk-packaged," and "OEM" batteries are not consistent with how Energizer's batteries are actually packaged and sold.  MBS represented, for example, that "bulk-packaged batteries" is meant to capture "batteries that are sold in bulk packaging."  5/21/20 Transcript at 10:10.  But as Energizer pointed out, MBS's definition of OEM batteries (any battery sold with a "Not for Retail Trade" designation) also implicates bulk-packaged batteries, so it is not clear which definition is meant to cover which category of batteries.  *Id*. at 10:11-11:6.  That is problematic because many of MBS's discovery requests ask for information specific to "OEM batteries" or "bulk-packaged batteries" — treating them as distinct, which is not always the case and leaves Energizer without a proper understanding of what is being sought.  *See generally* Requests.[1]  MBS attempted to clarify by

---

[1] "Request(s)" refers to Defendant's First Set of Requests for the Production of Documents and Things to Plaintiff, dated March 25, 2020.  "Interrogatory or Interrogatories" refers to Defendant's First Set of Interrogatories to Plaintiff, dated March 25, 2020.

distinguishing between retail packages and bulk packages,[2] but that distinction (1) does not solve

the bulk v. OEM issue, and (2) does not make sense, because Energizer sells retail packages of

bulk-count batteries, at least within the e-commerce channel.[3]

 Energizer agreed to revisit its internal categorization of batteries and offer definitions for

use that are in line with how the various product categories are actually treated within Energizer

and how records are kept.  Energizer did so and subsequently explained them to MBS during the

June 22, 2020 Meet & Confer, as follows:

- "Retail Batteries" are Energizer-branded batteries intended for sale to consumers and sold in Retail Packaging, which means clamshells, blister packs, carded products which contain a peg hole, boxed products sold in a retail-ready tray to be used on a shelf display, or (for online retail products only) brown cardboard boxes, all of which packaging is heavily branded and includes consumer-facing information and Energizer's trademarks and logos, frequently (but not always) featuring the Energizer bunny.  For the avoidance of doubt, Energizer Industrial Batteries are not Retail Batteries, as they are not intended for resale to consumers.

- "OEM Batteries" are Energizer-branded batteries marked "Not for Retail Trade," which are sold directly to Original Equipment Manufacturers specifically for sale in connection with a separate product, which are not intended for resale on their own and are not sold in Retail Packaging.

- "Bulk-Packaged Batteries" are Energizer-branded batteries that are not Retail Batteries or OEM Batteries.

MBS has insisted on use of its original definitions but those definitions render Energizer unable

to respond because they are not accurate and do not translate to the information and records

---

[2] 5/21/20 Transcript at 11:22-12:3 ("[W]e're not talking about the retail package that are sold to the consumer.  We're talking about . . . the larger cardboard boxes that would have larger numbers of batteries.  Not -- not the consumer products.").

[3] *See, e.g.*, Energizer AAA Batteries (48 Count), Triple A Max Alkaline Battery, available at: https://www.target.com/p/energizer-48pk-max-alkaline-aa-batteries/-/A-54142543?ref=tgt_adv_XS000000&AFID=google&fndsrc=tmnv/DFA=71700000064973782&CPNG=PLA_DVM%2B0060H00000r4Mw8QAE-Energizer-AO-GoogleSearch-2020-Batteries-Flight&adgroup=PLA_Energizer&LID=700000001393753pgs&network=g&device=c&location=9002004&gclid=CjwKCAjwjLD4BRAiEiwAg5NBFi0j8NpEHJ90cRhMd0opI3uGwUCX9UmEQFDU3BOeVn7xak49SycHhRoCDpcQAvD_BwE&gclsrc=aw.ds (last accessed July 21, 2020).

actually available.  Rather than not respond at all, Energizer's original objections and responses and these Supplemental Responses use the aforementioned Energizer definitions throughout, which accurately reflect Energizer's actual product categorizations.

## OBJECTIONS TO INSTRUCTIONS

Energizer objects as follows to the Instructions set forth by Defendant in the Requests:

A.      Energizer objects to Instruction A which "requires the production of documents or tangible things that were prepared, created, written, sent, dated, or received at any time up to the present," as overbroad.  By its own admission, Defendant has only sold Energizer batteries since 2009 at the earliest; as such, it is unreasonable for its 42 Requests to be unlimited in time. Energizer's own written discovery requests to Defendant are limited to the time period from October 2018 to the present, which further highlights the unreasonable scope of Defendant's Requests.  Counsel for Energizer addressed this issue to Defendant's attention and Defendant modified (by email dated Apr. 29, 2020) the applicable time period for certain of its Requests as follows:  Nov. 15, 2013 - Present (for Requests 1-10, 13-18, 24-29, 31-36 and 40-42), and January 2009 - Present (for Requests 11, 12, 19, 20 and 23).  Defendant is maintaining an indefinite duration for Requests 21-22, 30, and 37-39.  Defendant offers no explanation or basis for these extensive time frames which, even as to those it modified, are still overbroad.  As noted, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, requests for 7 or 11 years of records, or for records dating back indefinitely, are overbroad.

B.      Energizer objects to Instruction B to the extent that it states that "[f]or electronically stored information, the responsive materials shall be produced in the form in which it is ordinarily maintained, shall include any and all associated metadata and any and all associated files, and should identify the custodian from whom the information came."  The

parties are currently negotiating an ESI Protocol which will govern the production of electronically-stored information ("ESI"). Energizer will produce ESI in compliance with its obligations pursuant to that ESI Protocol, and objects to Instruction B to the extent that it attempts to impose any additional obligations on Energizer.

  C.  Energizer objects to Instruction C, which states that "[y]ou are required, in responding to these Requests, to obtain and produce all documents in the possession of, available to, or under the control of You, Your attorney, or any of Your agents," to the extent that it implicates documents and communications protected by the attorney-client privilege or the work-product privilege. Subject to its objections, Energizer will produce non-privileged, responsive information.

  D.  Energizer objects to Instruction D which states, "[w]here a specified document is requested, such Request shall be interpreted to include any other documents where it is known that such other documents contain information relevant to the Request," as vague and ambiguous and purporting to require Energizer to *imply* additional document requests even when the request at issue asks for only a specified document. Energizer will respond to the Requests as they are written.

### <u>SPECIFIC SUPPLEMENTAL OBJECTIONS AND RESPONSES TO REQUESTS</u>

  Energizer incorporates by reference, as if fully set forth therein, each of the foregoing objections to Definitions and Instructions into its objections and responses to each of the individually numbered Requests propounded by Defendant.

  Subject to and without waiving the foregoing objections, Energizer provides the below Supplemental Responses to the individually numbered Requests:

**REQUEST NO. 1**

Documents sufficient to identify each Energizer Product distributed or sold in the United States bearing, using, or embodying the Energizer Marks.

**RESPONSE TO REQUEST NO. 1**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 1 is based on a narrowed interpretation of "Energizer Products" as related to Energizer- brand batteries only.

Energizer objects to Request No. 1 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  The extensive documents sought by this Request do not relate to those issues or otherwise inform any pertinent fact in this litigation.  The Request is not tailored, for example, to confirming whether Energizer sells the specific SKUs, combinations, or types of Energizer batteries purchased or sold by Defendant (which Defendant is refusing to identify), or to what specific types of batteries Energizer has sold to Defendant's sources for Energizer batteries.

Energizer further objects to Request No. 1 because it is exceedingly overbroad insofar as it seeks information regarding sales *to* entities other than the Defendant or its sources (which Defendant refuses to identify), sales *by* entities other than Energizer, and regarding battery products other than those sold by Defendant.  As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries.  Yet, this Request has no connection to Defendant or its purchases or sales of Energizer batteries.  Request No. 1 is also

overbroad because it purports to seek documents covering every single sale in the United States from November 15, 2013 to present, with no explanation or basis for such an extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Energizer further objects to Request No. 1 because it seeks documents that relate to third party sales that are not within Energizer's possession, custody, and control.  Request No. 1 seeks documents regarding sales of Energizer batteries made by any entity in the country, including not only Energizer, but its Authorized Distributors and Resellers, other direct customers, and/or other unauthorized sellers (who are unknown to Energizer).  Energizer is not obligated to provide (and cannot provide) documents that are not within its possession, custody, or control.

Request No. 1 also presents a severely undue burden, to which Energizer objects.  Energizer is a global company that sells more than *3 billion* batteries a year into retailers, channels, and markets throughout the United States.  Energizer's battery product offerings also change regularly and there is no central repository of all Energizer battery sales from which 7 years of sales records can be pulled**.**  A manual review of records around the country to pull details regarding every single sale of Energizer batteries for 7 years is not justified by any countervailing need for the documents, which are irrelevant, and the Request is accordingly disproportionate.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  During the Meet & Confer process, MBS clarified that it was looking for a "list plus, you know, the corresponding spec sheet and photograph, representative photograph[s]"[4] of all Energizer battery products.  While Energizer

---

[4] 5/21/20 Transcript at 22:22-24.

maintains that this still casts too wide a net and does not waive its objections on relevance, breadth, burden, and proportionality, in the spirit of compromise, Energizer has agreed to compile and produce lists identifying its Retail Batteries, Bulk-Packaged Batteries, and OEM Batteries, with such lists to include sample imagery of the front and back of each general SKU of the relevant category of Energizer-branded batteries currently sold in the United States (the "Sample Retail SKU List," "Sample Bulk-Packaged SKU List," and "Sample OEM SKU List," respectively) (together the "Sample SKU Lists").  By letter dated June 30, 2020 (the "June 30th Letter"), MBS accepted this compromise proposal as sufficient to satisfy its Request Nos. 1-6 and 31-34, reserving future rights.

Subject to the Parties' compromise, and without waiver of the foregoing objections, Energizer states that it will compile and produce the above-described Sample Retail SKU List, Sample Bulk-Packaged SKU List, and Sample OEM SKU List

**REQUEST NO. 2**

A representative sample of each Energizer Product distributed or sold by Plaintiff in the United States, including the packaging in which it is distributed or sold.

**RESPONSE TO REQUEST NO. 2**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."   The remainder of Energizer's response to Request No. 2 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 2 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer

marks that are materially different from any genuine Energizer batteries sold to consumers. The extensive documents sought by this Request do not relate to those issues or otherwise inform any pertinent fact in this litigation. The Request is not tailored, for example, to the types of Energizer batteries purchased or sold by Defendant or that Energizer has sold to Defendant's sources for Energizer batteries (which Defendant is refusing to identify).

Energizer further objects to Request No. 2 because it is exceedingly overbroad insofar as it is not limited to Energizer battery sales to the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark. Request No. 2 is also overbroad because it seeks a sample of every Energizer battery product sold for 7 years without establishing any need for such an extensive set of product samples. Request No. 2 is also overbroad because it purports to seek a representative sample of every single product sold in the United States from November 15, 2013 to present, with no explanation or basis for such an extensive time frame. Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 2 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than *3 billion* batteries a year into retailers, channels, and markets in the United States. Energizer's products and product packaging change over time and there is no central repository of samples of every historical product sold by Energizer for the past 7 years. This Request thus presents not only an excessive and undue burden, but is not possible. And since there is no conceivable relevance to a product sample of this breadth, proportionality is not met by this Request.

Subject to and without waiver of the foregoing objections, Energizer states that, if

Defendant identifies the specific Energizer battery products that it purchases and resells in the United States, to the extent that Energizer sells those products, Energizer will produce for inspection a representative sample of the most recent, traditional (i.e., non-seasonal or otherwise special) authorized packaging for those products.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 3**

Documents sufficient to identify all OEM Batteries distributed or sold in the United States.

**RESPONSE TO REQUEST NO. 3**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 3 as overbroad in that it seeks documents related to "all" "OEM Batteries" sold on the market by any manufacturer or reseller, and not just Energizer-brand batteries.  Energizer reasonably construes this Request as limited to Energizer batteries.

Energizer also objects to this Request as entirely duplicative of Request No. 1, which broadly seeks documents sufficient to identify all Energizer Products bearing the Energizer marks sold in the United States.  Since "OEM Batteries" is not defined by Defendant to reasonably identify the products at issue, Energizer is reasonably interpreting this Request as related to Energizer batteries generally, in which case this Request is identical to Request No. 1.

Energizer accordingly incorporates by reference every objection set forth in its Response to Request No. 1 as if fully set forth herein.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 4**

A representative sample of all OEM Batteries distributed or sold by Plaintiff in the United States, including the packaging in which it is distributed or sold.

**RESPONSE TO REQUEST NO. 4**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer also objects to this Request as entirely duplicative of Request No. 2, which broadly seeks a sample of every single Energizer battery product distributed or sold in the United States for 7 years.  Since "OEM Batteries" is not defined by Defendant to reasonably identify the products at issue, Energizer is reasonably interpreting this Request as related to Energizer batteries generally, in which case this Request is identical to Request No. 2.  Energizer accordingly incorporates by reference every objection set forth in its Response to Request No. 2 as if fully set forth herein, as well as its substantive response thereto.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 5**

Documents sufficient to identify each bulk-packaged Energizer Product distributed or sold in the United States.

**RESPONSE TO REQUEST NO. 5**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 5 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 5 because the phrase "bulk-packaged batteries" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged batteries" is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer also objects to this Request as entirely duplicative of Request No. 1, which broadly seeks documents sufficient to identify all Energizer Products bearing the Energizer marks sold in the United States.  Since "bulk-packaged batteries" is not defined by Defendant to reasonably identify the products at issue, Energizer is reasonably interpreting this Request as related to Energizer batteries generally, in which case this Request is identical to Request No. 1. Energizer accordingly incorporates by reference every objection set forth in its Response to Request No. 1 as if fully set forth herein.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 6**

A representative sample of each bulk-packaged Energizer Product distributed or sold by Plaintiff in the United States, including the packaging in which it is distributed or sold.

**RESPONSE TO REQUEST NO. 6**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 6 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 6 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer also objects to this Request as entirely duplicative of Request No. 2, which broadly seeks a sample of every single Energizer battery product distributed or sold in the United States for 7 years.  Since "bulk-packaged Energizer Product" is not defined by Defendant to reasonably identify the products at issue, Energizer is reasonably interpreting this Request as related to Energizer batteries generally, in which case this Request is identical to Request No. 2. Energizer accordingly incorporates by reference every objection set forth in its Response to Request No. 2 as if fully set forth herein, as well as its substantive response thereto.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 7**

Documents sufficient to identify each bulk-packaged product distributed or sold by Plaintiff in the United States, including batteries bearing marks other than the Energizer Marks.

**RESPONSE TO REQUEST NO. 7**

Energizer objects to Request No. 7 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Energizer further objects to Request No. 7 to the extent that it refers to bulk-packaged "products."  As explained, the only products at issue in this case are Energizer-brand batteries.  There is therefore no justification for seeking information regarding products other than Energizer-brand batteries.

Energizer also objects to Request No. 7 as being entirely duplicative of Request No. 1, which broadly seeks documents sufficient to identify all Energizer Products bearing the Energizer marks sold in the United States.  Energizer accordingly incorporates by reference every objection set forth in its Response to Request No. 1 as if fully set forth herein.

To the extent that this Request seeks documents regarding products sold by Energizer with marks other than the Energizer Marks, Energizer objects because no other marks are at issue in this litigation and documents regarding other marks have no relevance here and would present even more of an over breadth problem and undue burden than that articulated by Energizer in response to Request No. 1, which objections are incorporated herein.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.  With respect to "batteries bearing marks other than the Energizer Marks," Energizer will rest on its original objections.

**REQUEST NO. 8**

A representative sample of each bulk-packaged battery product distributed or sold by Plaintiff in the United States, including batteries bearing marks other than the Energizer marks, with each sample including the packaging in which it is distributed or sold.

**RESPONSE TO REQUEST NO. 8**

Energizer objects to Request No. 8 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it. Energizer further objects to Request No. 8 to the extent that it refers to bulk-packaged "products." As explained, the only products at issue in this case are Energizer-brand batteries. There is therefore no justification for seeking information regarding products other than Energizer-brand batteries.

Energizer objects to Request No. 8 to the extent that it is duplicative of Request No. 2, which seeks a representative sample packaging for all Energizer Products. Energizer accordingly incorporates by reference every objection set forth in its Response to Request No. 2 as if fully set forth herein, as well as its substantive response thereto.

To the extent that this Request seeks documents regarding products sold by Energizer with marks other than the Energizer Marks, Energizer objects because no other marks are at issue in this litigation and thus samples of products bearing other marks have no relevance here and would present even more of an over breadth problem and undue burden than that articulated by Energizer in response to Request No. 2, which objections are incorporated herein.

**SUPPLEMENTAL OBJECTION & RESPONSE:** Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1. With respect to "batteries bearing marks other than the Energizer Marks," Energizer will rest on its original objections.

**REQUEST NO. 9**

Documents sufficient to show the total gross revenues and net profits generated from all sales of OEM Batteries, including all relevant accounting records.

**RESPONSE TO REQUEST NO. 9**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this

Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 9 because it is entirely irrelevant to the claims and defenses in this action. This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. Profits earned by Energizer are completely irrelevant and would not inform any pertinent fact in this litigation. In fact, it is Defendant's ill-gotten profits, rather than Energizer's profits, which are relevant to this case.

Energizer further objects to Request No. 9 because it is overbroad insofar as it is not limited in geographic scope. There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States. As such, Defendant has no basis for failing to set a geographic limit for this Request. Request No. 9 is also overbroad because it seeks financial documents for 7 years, with no explanation or basis for such an extensive time frame. Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of irrelevant financial records is overbroad.

Request No. 9 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than *3 billion* batteries a year into retailers, channels, and markets in the United States. There is no central repository of all Energizer product sales by which the revenue and profit information requested by Defendant is reasonably accessible.

**REQUEST NO. 10**

Documents sufficient to show the total gross revenues and net profits generated from all sales of bulk-packaged Energizer Products, including all relevant accounting records.

**RESPONSE TO REQUEST NO. 10**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products." The remainder of Energizer's response to Request No. 10 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 10 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it. Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap. Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer objects to Request No. 10 because it is entirely irrelevant to the claims and defenses in this action. This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. Profits earned by Energizer, whether in regards to "bulk-packaged" products sold or otherwise, are completely irrelevant and would not inform any pertinent fact in this litigation. In fact, it is Defendant's ill-gotten profits, rather than Energizer's profits which are relevant to this case.

Energizer further objects to Request No. 10 because it is overbroad insofar as it is not limited in geographic scope.   There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Request No. 10 is also overbroad because it seeks financial documents for 7 years, with no explanation or basis for such an extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of irrelevant financial records is overbroad.

Request No. 10 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than 3 billion batteries a year into retailers, channels, and markets in the United States.  There is no central repository of all Energizer sales that can be mined to compile the revenue and profit information requested by Defendant.

## REQUEST NO. 11

All documents concerning Plaintiff's attempts to purchase, and purchases of, Energizer Products from Defendant.

## RESPONSE TO REQUEST NO. 11

Energizer objects to Request No. 11 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer also objects to Request No. 11 as overly broad and unduly burdensome in that, based upon counsel's email clarification, Defendant seeks documents dating from January 2009 to present, or for over 11 years - an impossible task.  At the moment, Energizer has more than 6,500 employees.  There is no way for Energizer to know when and whether any one of those thousands of employees around the world, or any of the additional thousands of employees that it has had since 2009, might have purchased an Energizer-brand product from Defendant.

Subject to and without waiver of the foregoing objections, Energizer states that it will produce responsive, non-privileged documents, if any, regarding any purchases of Energizer-brand batteries made by Energizer in connection with its identification of the conduct of Defendant underlying this lawsuit.

**REQUEST NO. 12**

All documents concerning Plaintiff's offer to sell, or sale of, products to Defendant, including all offers to sell bulk products to Defendant.

**RESPONSE TO REQUEST NO. 12**

Energizer objects to Request No. 12 because the phrase "bulk products" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk products" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" used elsewhere by Defendant, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what is being requested here.

Energizer further objects to Request No. 12 as overly broad and unduly burdensome in that, based upon counsel's email clarification, Defendant seeks documents dating from January 2009 to present, or for over 11 years - an impossible task.  At the moment, Energizer has more than 6,500 employees.  There is no way for Energizer to know when and whether any one of those thousands of employees around the world, or any of the additional thousands of employees that it has had since 2009, might have sold, let alone offered to sell, Energizer-brand product to Defendant.  Moreover, if Energizer has made any such offer or sale to Defendant, Defendant is fully aware of it and would have such documents in its own possession and in much more reasonably accessible format.

Subject to and without waiver of the foregoing objections, Energizer states that, to the best of its knowledge, there are no documents in its possession that are responsive to Request

No. 12 because Energizer has not offered to sell, or sold, products to Defendant My Battery Supplier.

**REQUEST NO. 13**

Documents sufficient to identify each of Plaintiff's direct customers of OEM Batteries.

**RESPONSE TO REQUEST NO. 13**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 13 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  The identity of the persons or entities to whom Energizer sells its products is completely irrelevant and would not inform any pertinent fact in this litigation.

Energizer further objects to Request No. 13 because it is exceedingly overbroad insofar as it seeks information regarding sales to entities other than the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark.  As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries, including where those batteries come from.  Defendant's request for information regarding every direct customer of Energizer, regardless of whether that direct customer is a participant in Defendant's supply chain, is unreasonable in scope.

Request No. 13 is also overbroad because it is not limited in geographic scope, and seeks

information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.   There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.   As such, Defendant has no basis for failing to set a geographic limit on this Request.   Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Energizer also objects to Request No. 13 because it presents a severely undue burden. Energizer is a global company that sells more than 7.5 billion batteries a year into retailers, channels, and markets around the world.   There is no central repository of all "direct customers" and all documents related to those customers that can be mined to compile the voluminous set of materials sought by this Request.   It would present an excessive and undue burden for Energizer to manually compile documents regarding every direct customer it sells to around the globe, from many internal sources.   This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**   MBS has itself taken the position that the handful of resellers from which *it* purchases Energizer batteries are not relevant to this action (and refuses to produce that information to Energizer).   Yet, MBS simultaneously argues that the entire universe of Energizer's direct customers is relevant and should be turned over.   MBS has failed to articulate a cogent explanation for such a disproportionate and hypocritical position. Indeed, despite multiple Meet & Confers, MBS repeatedly states that it "needs to know the full scope of Energizer's direct customers during the relevant time period . . . so that MBS can prepare its defenses in this case," but has not identified a single defense that would be informed by that information.

At the May 21st Meet & Confer, MBS represented that it needed Energizer's direct customer list so that it could subpoena all of those customers "for agreements that they have with Energizer and/or representative samples of the products that they sell so that . . . we can see how those products are resold or packaged by those customers of Energizer." 5/21/20 Transcript at 36:17-23. When pressed to explain the relevance of any such agreements or samples, MBS further stated that "how [Energizer is] authorizing its products to be sold on the marketplace" is relevant to MBS's defense. *Id*. at 36:24-37:8. MBS, however, does not need Energizer's entire direct customer list to (i) ascertain how products are resold or packaged or (ii) identify what restrictions Energizer puts on its customers' resale of batteries.

As to (i) (how products are resold or packaged), Energizer has agreed to put together the Sample SKU Lists (*see* Supplemental Objection & Response to Request No. 1), which will identify each general SKU of the relevant categories of Energizer-branded batteries currently sold in the United States, along with sample imagery of the front and back of the packaging for each.. This plainly satisfies MBS's stated need to "see how [Energizer's] products are resold or packaged by those customers of Energizer" (5/21/20 Transcript at 36:17-23). This directly provides the information MBS is seeking and is far more efficient and proportional than demanding Energizer's entire roster of customers with the intended purpose of sending third party subpoenas to every single one of them.

As to (ii) (what restrictions Energizer puts on resale of its batteries), Energizer offered as a measure of compromise to search for and produce a representative sample of agreements, invoices, and/or other form documents exchanged with its customers that reflect the scope of restrictions that Energizer places on the repackaging of its Energizer-branded batteries, if any exist, subject to redaction of the customer names. Such representative agreements and materials

24

would provide the information MBS is seeking in a proportional way, yet MBS has rejected this compromise offer by Energizer.

Subject to and without waiver of the foregoing objections, Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1 as to MBS's stated need to "see how [Energizer's] products are resold or packaged by those customers of Energizer" (5/21/20 Transcript at 36:17-23). With regard to "how [Energizer is] authorizing its products to be sold on the marketplace" (*id*. at 36:24-37:8), Energizer reiterates its offer to search for and produce, if any exist, redacted, representative agreements that speak to packaging or repackaging. Energizer further states that, in instances where its customer relationships are not contractual, Energizer's Customer Supply Terms and Conditions apply, which are accessible at: https://www.energizerholdings.com/company/partners-suppliers/customer-terms-conditions.

## REQUEST NO. 14

Documents sufficient to identify each of Plaintiff's direct customers of bulk-packaged Energizer Products or bulk-packaged products bearing marks other than the Energizer marks.

## RESPONSE TO REQUEST NO. 14

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products." The remainder of Energizer's response to Request No. 14 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 14 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it. Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested

categories overlap. Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer objects to Request No. 14 because it is irrelevant to the claims and defenses in this action. This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. The identity of the persons or entities to whom Energizer sells its products is completely irrelevant and would not inform any pertinent fact in this litigation. Further, to the extent that this Request seeks documents regarding products sold by Energizer with marks *other than the Energizer marks*, Energizer objects because no other marks are at issue in this litigation and thus Energizer's customers of products bearing other marks have no relevance here.

Energizer further objects to Request No. 14 because it is exceedingly overbroad insofar as it seeks information regarding sales to entities other than the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark. As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries, including where those batteries come from. Defendant's request for information regarding every direct customer of Energizer, regardless of whether that direct customer is a participant in Defendant's supply chain, is unreasonable in scope. This Request is also overbroad to the extent that it seeks documents regarding marks other than the Energizer mark, which are not at issue in this case.

Request No. 14 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame. There is no allegation that Defendant sells Energizer-brand batteries

26

anywhere outside the United States.   As such, Defendant has no basis for failing to set a geographic limit on this Request.   Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Energizer also objects to Request No. 14 because it presents a severely undue burden. Energizer is a global company that sells more than *7.5 billion* batteries a year into retailers, channels, and markets around the world.   There is no central repository of all "direct customers" and associated documents even for the Energizer brand, let alone for every other brand or mark sold by Energizer, that can be mined for the type of extensive list sought by Defendant.  Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually compile information regarding every direct customer it sells to around the globe, from many internal sources.   This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**   Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 13.  To the extent that Request No. 14 seeks documents concerning "bulk-packaged products bearing marks other than the Energizer marks," Energizer rests on its original objections.

**REQUEST NO. 15**

All agreements and contracts between Plaintiff and Plaintiff's direct customers of OEM Batteries and bulk-packaged Energizer Products.

**RESPONSE TO REQUEST NO. 15**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."   The remainder of Energizer's response to

27

Request No. 15 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 15 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer further objects to Request No. 15 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  The identity of the persons or entities to whom Energizer sells its products is completely irrelevant and would not inform any pertinent fact in this litigation.

Energizer further objects to Request No. 15 because it is exceedingly overbroad insofar as it seeks information regarding sales to entities other than the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark.  As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries, including where

those batteries come from.  Defendant's request for information regarding every direct customer of Energizer that purchased batteries, regardless of whether that direct customer is a participant in Defendant's supply chain, is unreasonable in scope.

Request No. 15 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Energizer also objects to Request No. 15 because it presents a severely undue burden. Energizer is a global company that sells more than *7.5 billion* batteries a year into retailers, channels, and markets around the world.  There is no central repository of all "direct customer" names that can be mined for the type of extensive list sought by Defendant.  Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually search its systems to identify every direct customer it sells to around the globe, from many internal sources, to then identify and collect every potential contract between Energizer and those parties for nearly 7 years.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

Subject to and without waiver of the foregoing objections, Energizer states that, if Defendant identifies the entities or persons in its supply chain for Energizer batteries, Energizer can and will identify whether those entities or persons are direct customers of Energizer, and will provide the applicable agreements between Energizer and those parties to the extent that they

exist and subject to an appropriate protective order and necessary redactions to protect non-responsive and/or commercially sensitive information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 13.

**REQUEST NO. 16**

Each agreement to which Plaintiff is a party concerning the distribution or sale of OEM Batteries or bulk-packaged Energizer Products.

**RESPONSE TO REQUEST NO. 16**

Energizer objects to Request No. 16 because it is entirely duplicative of Request No. 15, which seeks all contracts and agreements that Energizer has with direct customers that purchase "OEM Batteries" or "bulk-packaged" batteries.  Energizer hereby incorporates its objections and responses to Request No. 15 as if set forth fully herein.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 13.

**REQUEST NO. 17**

All documents and communications concerning the packaging or repackaging of Energizer Products, including all agreements between Plaintiff and any third-party.

**RESPONSE TO REQUEST NO. 17**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 17 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 17 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer objects to Request No. 17 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  A compilation of every single document or communication concerning Energizer battery packaging for 7 years, is completely irrelevant and would not inform any pertinent fact in this litigation.

Energizer further objects to Request No. 17 because it is exceedingly overbroad insofar as it is not limited to Energizer battery sales to the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark.  Request No. 17 is also overbroad because it seeks all documents and communications "concerning" packaging or repackaging.  Energizer's battery products and packaging change not only annually, but from season to season over the years.  That is, Energizer packaging may change to reflect different holidays or other important events, and those changes will be different each year.  The universe of documents and communications in Energizer's possession that "concern" packaging or repackaging casts much too wide a net.

Request No. 17 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 17 also presents a severely undue burden, to which Energizer objects.  As previously explained, Energizer's product packaging changes over the course of each year as well as year-to-year.  There are countless discussions regarding what any new packaging will look like, changes to the packaging, minor edits, etc. that go into each and every packaging change.  This Request as written covers an unimaginable quantity of information that has no bearing whatsoever on this case and would take months, if not years, to compile, let alone review and produce, with no resulting value in this litigation.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 13.  Further responding, Energizer notes MBS's most recent position in its June 30th Letter that Energizer "must also produce documents and non-email communications concerning how the Energizer Products are packaged (or repackaged) when sold by Energizer or its direct customers."  As stated in Energizer's Supplemental Objection & Response to Request Nos. 1 and 13, the packaging for each general SKU of Energizer batteries in the relevant categories will be reflected in the Sample SKU Lists, and Energizer has offered to search for and produce form/representative agreements concerning packaging or repackaging, if any exist.  Beyond that, Energizer has directed MBS to Energizer's Customer Supply Terms and Conditions apply, which are accessible at: https://www.energizerholdings.com/company/partners-suppliers/customer-terms-conditions.

To the extent that MBS is continuing to demand that Energizer search its entire universe of business records for each and every potential communication or document that somehow relates to packaging or repackaging, Energizer maintains its original objections.

**REQUEST NO. 18**

All documents concerning advertising, marketing and promotion of OEM Batteries and bulk-packaged Energizer Products, including all solicitations, customer correspondence, sales sheets, price lists, product offers, promotional materials, and advertisements using the Energizer marks.

**RESPONSE TO REQUEST NO. 18**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 18 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 18 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer objects to Request No. 18 because it is entirely irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing

the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  Energizer's "advertising, marketing and promotion of OEM Batteries and bulk-packaged Energizer Products" simply has no bearing on the claims and defenses in this case.

Energizer further objects to Request No. 18 because it is exceedingly overbroad insofar as it is not limited to Energizer battery sales to the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark.  Request No. 18 is also overbroad because it seeks "all documents concerning" advertising, marketing and promotion of Energizer batteries and, despite the breadth of that, also details inclusion of "all" "solicitations, customer correspondence, sales sheets, price lists, product offers, promotional materials, and advertisements using the Energizer marks."   Essentially, this Request seeks every marketing and sales business record for Energizer batteries for 7 years.  Such breadth is beyond unreasonable.

Request No. 18 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 18 also presents a severely undue burden, to which Energizer objects.  Given the scope of this Request, which essentially seeks every marketing and sales business record for Energizer batteries for 7 years, Energizer likely has millions of potentially-responsive documents.  Many of those documents will be in different languages and concern trademarks and products that are not active or applicable in the United States.  Even if limited to Energizer

batteries sold in the United States, however, this Request seeks an unimaginable quantity of information that has no bearing whatsoever on this case, much of which would be practically impossible to collect and review within any reasonable discovery period.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  During the June 1st Meet & Confer, MBS articulated that this request, though broadly stated, was meant to seek production of "the typical set of materials" that an Energizer representative might use in attempting to sell batteries to an OEM, such as "sell sheets."[5]   In light of this clarification, Energizer agreed to undertake to determine whether such materials were available subject to a reasonable and proportional search and, if so, to produce any such non-privileged documents.

In its June 30th Letter, MBS appears to revert to the broad scope of its initial request language demanding that RFP No. 18 seeks "[a]ll documents concerning advertising, marketing and promotion of OEM Batteries and bulk-packaged Energizer Products, including all solicitations, customer correspondence, sales sheets, price lists, product offers, promotional materials, and advertisements using the Energizer marks."   As already discussed, that language is so unlimited as to require a search of all correspondence throughout Energizer that has anything to do with OEM or Bulk-Packaged Batteries and Energizer maintains its relevance, scope, burden, and proportionality objections if MBS is still seeking such an unreasonable scope of material.

---

[5] 6/1/20 Transcript at 24:5-8; *id.* 25:7-11 ("[MS. NAGLE:  All right. I think I understand what you're getting at . . . we'll have to take that back and just see how that connects with what they actually do and have, and we'll -- we'll get back with you on that one.").

Subject to and without waiver of the foregoing objections, and as to Request No. 18 as originally drafted and seemingly reinforced by MBS in its June 30th Letter, Energizer maintains its original objections.  Energizer reiterates, however, its compromise offer to search for and produce, "the typical set of materials" that an Energizer representative might use in attempting to sell batteries to an OEM, such as "sell sheets."

**REQUEST NO. 19**

All documents and things concerning Defendant, including any investigative report, evaluation, inspection, analysis, testing or comparison involving the Accused Products.

**RESPONSE TO REQUEST NO. 19**

Energizer objects to Request No. 19 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer also objects to Request No. 19 as overly broad and unduly burdensome in that it seeks "all documents and things concerning Defendant" from January 2009 to present, or for over 11 years - an impossible task.  At the moment, Energizer has more than 6,500 employees. There is no way for Energizer to know when and whether any one of those thousands of employees around the world, or any of the additional thousands of employees that it has had since 2009, might have some document or thing that "concerns" Defendant.

Subject to and without waiver of the foregoing objections, Energizer states that it will produce responsive, non-privileged documents, if any, regarding any "investigative report, evaluation, inspection, analysis, testing or comparison" specific to Energizer's identification of the conduct of Defendant underlying this lawsuit.

**REQUEST NO. 20**

All communications between Plaintiff and one or more third-parties regarding Defendant.

**RESPONSE TO REQUEST NO. 20**

Energizer objects to Request No. 20 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer objects to Request No. 20 to the extent that it is duplicative of Request No. 19.

Energizer also objects to Request No. 20 as overly broad and unduly burdensome in that it seeks "all communications …regarding Defendant" from January 2009 to present, or for over 11 years - an impossible task.  At the moment, Energizer has more than 6,500 employees.  There is no way for Energizer to know when and whether any one of those thousands of employees around the world, or any of the additional thousands of employees that it has had since 2009, might have had a communication with any third party "regarding Defendant."  Moreover, because Energizer does not sell, and has not sold, to Defendant, there is no designated person or persons that has historically handled, or that currently handles, Defendant as a customer or business partner.  As such, Energizer cannot identify one person or even a group of persons whose communications could be reasonably reviewed to obtain information responsive to this Request.

Subject to and without waiver of the foregoing objections, Energizer states that, in addition to the responsive, non-privileged documents that will be produced in response to Request No. 19 (if any exist), it will produce responsive, non-privileged communications related to any such documents as well.

**REQUEST NO. 21**

Documents sufficient to show the date of Plaintiff's first use and continued use of each of the Energizer marks.

**RESPONSE TO REQUEST NO. 21**

Energizer objects to Request No. 21 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer further objects to this Request on the ground that it seeks "documents sufficient to show the date of Plaintiff's first use . . . of each of the Energizer marks," despite that the relevant filings with the U.S. Patent and Trademark Office ("USPTO") reflect the best, undisputed evidence of its first use in commerce.  And, to the extent that the Request seeks documents showing Energizer's "continued use" of the marks, it is overly broad and unduly burdensome because such documents will not add any relevant information on the issue and would require compilation of historical documents going back indefinitely, as this Request is unlimited in time.

Subject to and without waiver of the foregoing objections, Energizer directs Defendant to the U.S. Patent and Trademark Office's Trademark Electronic Search System, and specifically http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4804:omgrrp.2.1 (results for Serial No. 78697159).

**REQUEST NO. 22**

All documents and things concerning the registration of the Energizer marks with the U.S. Patent and Trademark Office.

**RESPONSE TO REQUEST NO. 22**

Energizer objects to Request No. 22 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer further objects to this Request on the ground that it seeks "all documents and things concerning" Energizer's registration of the mark(s) at issue, despite that the relevant filings with the U.S. Patent and Trademark Office ("USPTO") reflect the best, undisputed

evidence of such registration.  Any request for documents beyond that are overly broad and unduly burdensome because they will not add any relevant information on the issue and would require compilation of historical documents going back indefinitely, as this Request is unlimited in time.

Subject to and without waiver of the foregoing objections, Energizer directs Defendant to the U.S. Patent and Trademark Office's Trademark Electronic Search System, and specifically http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4804:omgrrp.2.1 (results for Serial No. 78697159).

## REQUEST NO. 23

All documents concerning Plaintiff's knowledge of the Accused Products and when that knowledge began, including correspondence with third parties, internal communications, and memoranda.

## RESPONSE TO REQUEST NO. 23

Energizer objects to Request No. 23 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer also objects to Request No. 23 as overly broad and unduly burdensome in that it seeks "all documents" regarding Energizer's knowledge of Defendant's materially different Energizer batteries being sold online, from January 2009 to present, or for over 11 years.  This is an impossible task.  At the moment, Energizer has more than 6,500 employees.  There is no way for Energizer to know when and whether any one of those thousands of employees around the world, or any of the additional thousands of employees that it has had since 2009, might have identified that Defendant was selling Energizer batteries online at some point in over 11 years.  Moreover, because Energizer does not sell to Defendant, there is no designated person or persons that has historically handled, or that currently handles, Defendant as a customer or business

partner.  As such, Energizer cannot identify one person or even a group of persons whose communications could be reasonably reviewed to obtain information responsive to this Request.

Subject to and without waiver of the foregoing objections, Energizer states that it will produce responsive, non-privileged documents, if any, regarding Energizer's identification of the conduct of Defendant underlying this lawsuit.

## REQUEST NO. 24

Documents sufficient to show the channels of trade of OEM Batteries and bulk-packaged Energizer Products, including customer lists and sales records, and any retail stores and online websites where such products are or were intended to be sold or offered for sale.

## RESPONSE TO REQUEST NO. 24

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 24 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 24 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer objects to Request No. 24 because the phrase "channels of trade" is vague and undefined and Energizer does not know what Defendant means by it.  This phrase is also susceptible to many different meanings even within the industry.  Energizer will not guess how Defendant expects it to be interpreted.  Because this Request specifically asks for documents "sufficient to show the channels of trade of OEM Batteries and bulk-packaged Energizer Products," but does not reasonably identify what is being sought, Energizer cannot respond to it.

Energizer further objects to Request No. 24 because it is entirely irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  Energizer's "channels of trade of OEM Batteries and bulk-packaged Energizer Products" has no bearing on the claims pled in this case.  The Request is not tailored, for example, to the specific Energizer batteries sold by Defendant (which Defendant is refusing to identify), or that Energizer has sold to Defendant's sources for Energizer batteries.

Energizer further objects to Request No. 24 because it is exceedingly overbroad insofar as it is not limited to Energizer battery sales to the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark, and in fact has nothing to do with the same. Request No. 24 is also overbroad because it seeks all documents "sufficient to show" Energizer's channels of trade for batteries for the past 7 years.  Energizer's "customer lists and sales records, and any retail stores and online websites where such products are or were intended to be sold or offered for sale" simply have no bearing on the issues in this case, and implicate significant commercially sensitive information.

Request No. 24 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 24 also presents a severely undue burden, to which Energizer objects.  This Request, which asks for documents "sufficient to show the channels of trade of OEM Batteries and bulk-packaged Energizer Products, including customer lists and sales records, and any retail stores and online websites where such products are or were intended to be sold or offered for sale," from around the world over the past 7 years, virtually asks for every single business record in Energizer's possession and implicates an unimaginable quantity of information that has no bearing whatsoever on this case.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  As Energizer has repeatedly explained to MBS, it is entirely unclear what sort of information MBS is seeking to discover in Request 24. During the parties' June 1st Meet & Confer, MBS attempted to clarify the goal of this Request, citing by way of example, "internal documents that show where the products are actually marketed, where they're actually sold," including specifically "some sort of analysis report" or "analysis showing websites where different products are sold."[6]  Energizer indicated that it would look into what, if anything, of that nature exists and whether Energizer would agree to

---

[6] 6/1/2020 Transcript at 27:14-20.

produce it.[7]  As counsel then explained during the June 22nd Meet & Confer, after looking further into it, Energizer confirmed that there are no specific departments or records that can be identified and mined for documents that generically show the channels in which specific Energizer batteries are sold.  Energizer's channels of trade are part of its business and, as such, every document could possibly "show" the channels of trade.  Asking for "marketing studies" more generally does not assist in narrowing this down, as "marketing studies" could be performed for many things and, like any other documents, might "show" the channels of trade.

It is not possible for Energizer to identify what is sought by this Request and Energizer maintains its objections to the extent that MBS is demanding that Energizer search every single marketing study or advertising plan for 7 years to try to decipher if it may contain the type of "channel" information that MBS is seeking.  As Energizer has explained already, it would be happy to respond to an Interrogatory directed at generally identifying its channels of trade.  Otherwise, Energizer maintains its previously asserted objections.

**REQUEST NO. 25**

Documents sufficient to identify the retail customer base of products sold under the Energizer marks, including market studies, marketing materials, business plans, memoranda, internal communications, and surveys.

**RESPONSE TO REQUEST NO. 25**

Energizer objects to Request No. 25 because Energizer's retail customer base is entirely irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer mark from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online

---

[7] *Id.* at 27:3-28:1 ("[MS. NAGLE:]  I think -- I mean, we'll see what -- what, if anything, there is on this that we can -- that would be reasonably available to provide.").

resale of batteries bearing the Energizer mark that are materially different from any genuine Energizer batteries sold to consumers.  Indeed, this case relates to Defendant's online sales direct to consumers, rendering Energizer's distribution to retail stores completely beyond the scope of relevance in this case.

Energizer further objects to Request No. 25 because it is exceedingly overbroad insofar as it is not limited to Energizer battery sales to the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark, and in fact has nothing to do with the same. Request No. 25 is also overbroad because it seeks all documents "sufficient to identify" Energizer's retail customer base for the past 7 years.  Energizer's "market studies, marketing materials, business plans, memoranda, internal communications, and surveys" simply have no bearing on the issues in this case, all of which deal with Defendant's resale of materially different Energizer batteries to consumers via online platforms.

Request No. 25 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 25 also presents a severely undue burden, to which Energizer objects.  This Request seeks virtually every Energizer business record related to its distribution in the retail market, for the past 7 years.  This could easily amount to hundreds of thousands, if not millions,

of potentially-responsive documents.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  MBS has not articulated how Request No. 25, which seeks "market studies and marketing materials  . . .  sufficient to identify the retail customer base of products sold under the Energizer Marks," is proportionately directed to identifying documents that may be relevant to this case.[8]   As Energizer explained during the June 1st Meet & Confer, virtually any and every "market study" or "marketing material" could identify the "retail customer base" and such information, i.e. where Energizer-branded batteries are sold, is not uniquely in Energizer's possession since consumers can readily purchase the products in the market.  Following that discussion, counsel for MBS indicated that he would try and articulate the relevance of Request No. 25 and propose some clarifying proposals in an email to Energizer.[9]  MBS never followed-up with any explanation of the relevance of this request or to narrow or clarify the scope of the request.  MBS's June 30th Letter also does not narrow or clarify the Request, instead simply reiterating its demand for all market studies.  *See* June 30th Letter, at 4.

The burden of searching for and collecting every single company market study for the past 7 years is clear on its face, and particularly so where MBS has not articulated how that information is relevant and proportional in the first instance.  To the extent that this Request asks for virtually every marketing-related document Energizer has in its possession, Energizer will

---

[8] *See, e.g.*, 6/1/20 Transcript at 28:12-37:7.

[9] 6/1/20 Transcript at 37:8-12 ("MR. BERKOWITZ:  Okay.  We've spent quite a bit of time on this.  Maybe we should, you know, see if we can -- we'll put it into -- you know, into an e-mail, if we could exchange some proposals on it, but it seems like we're in a little bit of a stalemate on this one.") (emphasis added).

rest on its original objections as to Request No. 25.  Energizer continues to be open to receiving a clarification or narrowing of this Request.

**REQUEST NO. 26**

All business proposals, business plans, marketing plans, advertising plans, and advertising campaigns concerning products sold or provided, or intended to be sold or provided, under the Energizer marks.

**RESPONSE TO REQUEST NO. 26**

Energizer objects to Request No. 26 because it is entirely irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  Energizer's "business proposals, business plans, marketing plans, advertising plans, and advertising campaigns" simply have no bearing on the claims and defenses in this case.

Energizer further objects to Request No. 26 because it is exceedingly overbroad insofar as it is not limited to Energizer battery sales to the Defendant or the source(s) from which Defendant is purchasing bearing the Energizer mark, and in fact has nothing to do with the same. Request No. 26 is also overbroad because it seeks "all business proposals, business plans, marketing plans, advertising plans, and advertising campaigns concerning products sold or provided, or intended to be sold or provided, under the Energizer marks," for the past 7 years. That information simply has no bearing on the issues in this case, all of which deal with Defendant's resale of materially different Energizer batteries.

Request No. 26 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and

extensive time frame.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 26 also presents a severely undue burden, to which Energizer objects.  This Request seeks virtually every single business record related to the Energizer brand for the past 7 years.  This could easily amount to hundreds of thousands, if not millions of potentially-responsive documents.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  MBS has not articulated how Request No. 26, which seeks "business proposals, business plans, marketing plans, advertising plans, and advertising campaigns concerning products sold or provided, or intended to be sold or provided, under the Energizer Marks," is proportionately directed to identifying documents that may be relevant to this case.[10]  As Energizer explained during the June 1st Meet & Confer, the Request seeks virtually every business document in Energizer's possession.  As with Request No. 25, counsel for MBS indicated that he would follow up with a further explanation of what relevant materials were being sought in an email to Energizer,[11] but never did so.  And again, MBS's June 30th Letter simply reiterates the request as drafted.  *See* June 30th Letter, at 4.

---

[10] *See, e.g.*, 6/1/20 Transcript at 28:12-37:7.

[11] 6/1/20 Transcript at 37:8-12 ("MR. BERKOWITZ:  Okay.  We've spent quite a bit of time on this.  Maybe we should, you know, see if we can -- we'll put it into -- you know, into an e-mail, if we could exchange some proposals on it, but it seems like we're in a little bit of a stalemate on this one.") (emphasis added).

The burden of searching for and collecting every single company business record for the past 7 years is clear on its face, and particularly so where MBS has not articulated how that information is relevant and proportional in the first instance. To the extent that this Request asks for virtually every business document Energizer has in its possession, Energizer will rest on its original objections as to Request No. 26. Energizer continues to be open to receiving a clarification or narrowing of this Request.

## REQUEST NO. 27

All agreements between Plaintiff and any other person, whereby either Plaintiff or said person was granted the right to or was prohibited from manufacturing, advertising, distributing, offering for sale or selling goods or services under the Energizer marks, including manufacturing agreements, distribution agreements, license agreements, settlement agreements, consent agreements and coexistence agreements.

## RESPONSE TO REQUEST NO. 27

Energizer objects to Request No. 27 on the grounds that it seeks irrelevant documents. This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. Energizer's third party "manufacturing agreements, . . . license agreements, settlement agreements, consent agreements and coexistence agreements" simply have no bearing on the claims and defenses in this case, particularly where not limited to any agreements with third parties in Defendant's supply chain.

Energizer further objects to Request No. 27 because it is exceedingly overbroad insofar as it is not limited to Energizer's agreements with the Defendant or the entities from which

Defendant is purchasing bearing the Energizer mark.  Request No. 27 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a geographic limit on this Request.  Moreover, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Energizer also objects to Request No. 27 because it presents a severely undue burden. Energizer does not have a central repository of all third party agreements, thus implicating a manual process of identifying and collecting every single third party contract that Energizer has and then reviewing every one for the types of contractual obligations or restrictions noted in the Request.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

Subject to and without waiver of the foregoing objections, Energizer states that, if Defendant identifies the entities or persons in its supply chain for Energizer batteries, Energizer can and will identify whether it has any third party agreements with those entities or persons that contain the types of provisions requested, and will provide the applicable agreements subject to an appropriate protective order and necessary redactions to protect non-responsive and/or commercially sensitive information.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Subject to and without waiver of the foregoing objections, Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 13.

**REQUEST NO. 28**

All documents concerning enforcement of the Energizer marks by Plaintiff notice letters, watch services, litigations and proceedings before the Trademark Trial and Appeal Board.

**RESPONSE TO REQUEST NO. 28**

Energizer objects to Request No. 28 because the phrase "concerning enforcement" is vague and undefined and Energizer will not guess how Defendant expects it to be interpreted.

Energizer further objects to Request No. 28 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Energizer also objects to Request No. 28 on the grounds that it seeks irrelevant documents.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. Energizer's enforcement activity regarding its marks *as to other third parties* has no bearing on the claims and defenses in this case.

Energizer further objects to this Request on the ground that it is overbroad in that it is not limited to enforcement activity as to Defendant and it seeks documents for 7 years, with no substantiation for such an extensive breadth.  Indeed, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

This Request would also place an undue burden on Energizer, because it would entail collecting "all documents *concerning enforcement*" (which is not defined in any way) for a 7 year period.

**REQUEST NO. 29**

A copy of each letter or message concerning the Energizer marks sent by Plaintiff to any Amazon seller.

**RESPONSE TO REQUEST NO. 29**

Energizer objects to Request No. 29 on the ground that "Amazon seller" is undefined, vague, and ambiguous. Energizer will reasonably interpret "Amazon seller" to mean any third party selling Energizer batteries on Amazon.com for purposes of further responding to this Request.

Energizer further objects to Request No. 29 on the grounds that it seeks irrelevant documents. This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. Letters or messages from Energizer to *other third parties* selling Energizer batteries on Amazon.com have no bearing on the claims and defenses in this case.

Energizer further objects to this Request on the ground that it is overbroad in that it is not limited in any way at all and simply seeks every communication between Energizer and any "Amazon seller" regardless of the content or subject matter of those communications. This Request is also overbroad in that it seeks documents for 7 years and with a global reach, with no substantiation for such an extensive breadth. Indeed, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Energizer also objects to Request No. 29 to the extent that it seeks documents already in the Defendant's possession; namely, any of Energizer's communications with Defendant's own Amazon seller account.

**REQUEST NO. 30**

All documents that support or contradict Plaintiff's statement that "Energizer does not sell any Batteries to consumers with [a 'Not for Retail Trade'] designation." (Am. Compl. ¶ 5).

**RESPONSE TO REQUEST NO. 30**

Energizer objects to Request No. 30 to the extent that it suggests Energizer is required to prove a negative, i.e., that it does <u>not</u> sell any batteries to consumers with a "Not for Retail Trade" designation, through documentary evidence. Energizer can and will provide testimony to support that it does <u>not</u> sell any batteries to consumers with a "Not for Retail Trade" designation.

Subject to and without waiver of the foregoing objections, Energizer will produce non-privileged, responsive documents identified pursuant to a reasonable inquiry, if any.

**REQUEST NO. 31**

Copies of all consumer safety information included on the packaging of OEM Batteries and bulk-packaged Energizer Products.

**RESPONSE TO REQUEST NO. 31**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products." The remainder of Energizer's response to Request No. 31 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this

Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 31 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer further objects to Request No. 31 because it is exceedingly overbroad insofar as it is not limited to "consumer safety information" required for the types of Energizer batteries sold by Defendant to consumers and instead seeks copies of "all" "consumer safety information" from every Energizer battery product sold in the world without establishing any need for such an extensive set of materials.  Request No. 31 is also overbroad because it purports to seek documents from November 15, 2013, to present, with no explanation or basis for such a global reach and extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of global records is overbroad.

Request No. 31 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than **7.5 billion** batteries a year into retailers, channels, and markets around the world.  Energizer's consumer safety information changes over time.  There is no central repository of all Energizer batteries offered for sale for the past 7 years that can be mined to obtain "all" "consumer safety information" for every single one of the billions of batteries sold by Energizer each year.  Even if such an exercise were theoretically

possible, it would present an excessive and undue burden for Energizer to manually compile information regarding every iteration of "consumer safety information" it has used for every Energizer battery product sold worldwide over the past 7 years.  This Request thus presents not only an excessive and undue burden, but is not possible.  And since there is no conceivable relevance to such an extensive set of material with no connection to the actual batteries at issue in this case, proportionality is not met by this Request.

Subject to and without waiver of the foregoing objections, Energizer states that, if Defendant identifies the specific Energizer battery products that it purchases and resells in the United States, to the extent that Energizer sells those products, Energizer will produce a representative sample of the authorized consumer safety information for those products.

**SUPPLEMENTAL OBJECTION & RESPONSE:**   Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 32**

Copies of all safe handling instructions included on the packaging of OEM Batteries and bulk-packaged Energizer Products.

**RESPONSE TO REQUEST NO. 32**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."   The remainder of Energizer's response to Request No. 32 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 32 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer further objects to Request No. 32 because it is exceedingly overbroad insofar as it is not limited to "safe handling instructions" required for the types of Energizer batteries sold by Defendant to consumers and instead seeks copies of "all" "safe handling instructions" for every Energizer battery product sold in the world without establishing any need for such an extensive set of materials.  Request No. 32 is also overbroad because it purports to seek documents from November 15, 2013, to present, with no explanation or basis for such a global reach and extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of global records is overbroad.

Request No. 32 also presents a severely undue burden, to which Energizer objects.  Energizer is a global company that sells more than *7.5 billion* batteries a year into retailers, channels, and markets around the world.  Energizer's safe handling instructions change over time.  There is no central repository of all Energizer batteries offered for sale for each of the past 7 years that can be mined to obtain "all" "safe handling instructions" for every single one of the billions of batteries sold by Energizer each year.  Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually compile information regarding every iteration of "consumer safety information" it has used for every

55

Energizer battery product sold worldwide over the past 7 years.  This Request thus presents not only an excessive and undue burden, but is not possible.  And since there is no conceivable relevance to such an extensive set of material with no connection to the actual batteries at issue in this case, proportionality is not met by this Request.

Subject to and without waiver of the foregoing objections, Energizer states that, if Defendant identifies the specific Energizer battery products that it purchases and resells in the United States, to the extent that Energizer sells those products, Energizer will produce for inspection a representative sample of the authorized safe handling instructions for those products.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 33**

Copies of all warning or warranty copy included on the packaging of OEM Batteries and bulk-packaged Energizer Products.

**RESPONSE TO REQUEST NO. 33**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 33 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 33 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it. Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap. Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer further objects to Request No. 33 because it is exceedingly overbroad insofar as it is not limited to "warning or warranty copy" for the types of Energizer batteries sold by Defendant to consumers and instead seeks copies of "all" "warning or warranty copy" for every Energizer battery product sold in the world without establishing any need for such an extensive set of materials. Request No. 33 is also overbroad because it purports to seek documents from November 15, 2013, to present, with no explanation or basis for such a global reach and extensive time frame. Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of global records is overbroad.

Request No. 33 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than *7.5 billion* batteries a year into retailers, channels, and markets around the world. Energizer's warning or warranty copy changes over time. There is no central repository of all Energizer batteries offered for sale for each of the past 7 years that can be mined to obtain "all" "warning or warranty copy" for every single one of the billions of batteries sold by Energizer each year. Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually compile information regarding every iteration of "warning or warranty copy" it has used for every

57

Energizer battery product sold worldwide over the past 7 years.  This Request thus presents not only an excessive and undue burden, but is not possible.  And since there is no conceivable relevance to such an extensive set of material with no connection to the actual batteries at issue in this case, proportionality is not met by this Request.

Subject to and without waiver of the foregoing objections, Energizer states that, if Defendant identifies the specific Energizer battery products that it purchases and resells in the United States, to the extent that Energizer sells those products, Energizer will produce for inspection a representative sample of the authorized warning or warranty copy for those products.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Response to Request No. 1.

**REQUEST NO. 34**

Documents sufficient to show the packaging of all OEM Batteries and bulk-packaged Energizer Products.

**RESPONSE TO REQUEST NO. 34**

Energizer objects to Request No. 34 as being entirely duplicative of Request No. 2 (which seeks a representative sample of the packaging for all "Energizer Products"), No. 4 (which seeks a representative sample of the packaging for all Energizer "OEM Batteries") and No. 6 (which seeks a representative sample of the packaging for all Energizer "bulk-packaged" batteries).  Energizer cannot discern any difference between Request No. 34 and Request Nos. 2, 4, and 6, and hereby incorporates its objections and responses to Request Nos. 2, 4, and 6 as if set forth fully herein.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its Supplemental Objection & Responses to Request Nos. 1 and 18 above.

**REQUEST NO. 35**

Documents sufficient to show the location(s) where OEM Batteries and bulk-packaged Energizer Products are stored by Plaintiff in the United States.

**RESPONSE TO REQUEST NO. 35**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 35 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 35 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer objects to Request No. 35 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. Where Energizer stores all of its batteries in the United States is completely irrelevant and would

not inform any pertinent fact in this litigation.  Indeed, Defendant is not buying Energizer batteries from Energizer so this Request bears no connection to the issues in this case at all.

Energizer further objects to Request No. 35 because it is exceedingly overbroad insofar as it is not limited to seeking information and documents regarding where the specific Energizer batteries that Defendant has purchased are stored.  Request No. 35 is also overbroad because it purports to seek documents from November 15, 2013, to present, with no explanation or basis for such an extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 35 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than *3 billion* batteries a year into retailers, channels, and markets in the United States.  Energizer stores battery products in many different locations around the world and there is no central repository of all Energizer products offered for sale for each of the past 7 years that can be mined to identify the information requested by Defendant.  Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually compile information regarding the storage of every Energizer battery product sold in the United States over the past 7 years.  This Request thus presents not only an excessive and undue burden, but is not possible.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  With respect to Request Nos. 35 and 36, and pursuant to the parties' Meet & Confers, MBS has agreed that a list of the U.S. locations at which Energizer OEM and Bulk-Packaged Batteries are stored and from which they are shipped will satisfy these Requests.  *See* June 30th Letter, at 3.

Pursuant to that agreement, and subject to and without waiver of its objections, Energizer states that Energizer Bulk-Packaged Batteries and OEM Batteries are currently stored in and shipped from three locations in the United States:

| | | |
|---|---|---|
| DHL | DHL | UWT |
| Rock Hill (HP) 712 | Riverside - Location 754 | Memphis - Location 755 |
| 874 Paragon Way | 12249 Holly Street, Bld. B | 823 East Holmes Road |
| Rock Hill, SC 29730 | Riverside, CA  92509 | Memphis, TN 38116 |

**REQUEST NO. 36**

Documents sufficient to show the location(s) from which OEM Batteries and bulk packaged Energizer Products are shipped by Plaintiff in the United States.

**RESPONSE TO REQUEST NO. 36**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 36 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Request given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Request No. 36 because the phrase "bulk-packaged" is vague and undefined and Energizer does not know what Defendant means by it.  Defendant's use of the phrase "bulk-packaged" batteries is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer objects to Request No. 36 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  The locations from where Energizer ships its batteries are completely irrelevant and would not inform any pertinent fact in this litigation.  Indeed, Defendant is not buying Energizer batteries from Energizer so this Request bears no connection to the issues in this case at all.

Energizer further objects to Request No. 36 because it is exceedingly overbroad insofar as it is not limited to seeking information and documents regarding where the specific Energizer batteries that Defendant has purchased were shipped from.  Request No. 36 is also overbroad because it purports to seek documents from November 15, 2013, to present, with no explanation or basis for such an extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 36 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than *3 billion* batteries a year into retailers, channels, and markets in the United States.  Energizer ships battery products from many different locations around the United States and there is no central repository of all Energizer batteries offered for sale for each of the past 7 years that can be mined to identify the information requested by Defendant.  Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually compile information regarding

shipment of every Energizer battery product sold in the United States over the past 7 years.  This
Request thus presents not only an excessive and undue burden, but is not possible.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer hereby incorporates in full its
Supplemental Objection & Response to Request No. 35.

**REQUEST NO. 37**

All documents that support or contradict Plaintiff's statement that "[c]onsumers are likely
to be, and/or have been confused as to the origin, sponsorship, and/or approval of Energizer
batteries sold by MBS ...." (Am. Compl. ¶ 11).

**RESPONSE TO REQUEST NO. 37**

Energizer objects to Request No. 37 to the extent that it seeks "all documents" that
support or contradict Plaintiff's statement in Paragraph 111 of the First Amended Complaint,
because (i) Energizer is not in possession, custody, or control of "all" documents in existence
that may support or contradict the statement because it turns in large part on third party
consumers; and (ii) discovery is only now underway.

Subject to and without waiving the foregoing objections, Energizer directs Defendant to
the following paragraphs of its First Amended Complaint (ECF No. 29): ¶ 50, ¶¶ 55-57, which
provide images of various consumer reviews reflecting their confusion and disappointment in
batteries sold by Defendant with the Energizer mark.  Energizer will seasonably supplement this
response if additional documents are identified.

**REQUEST NO. 38**

All documents that support or contradict Plaintiff's statement that "[a]s a result of MBS's
actions, Energizer is suffering a loss of the enormous goodwill that it has created with its
trademarks and is losing profits from lost sales of products." (Am. Compl. ¶ 13).

**RESPONSE TO REQUEST NO. 38**

Energizer objects to Request No. 38 to the extent that it seeks "all documents" that support or contradict Plaintiff's statement in Paragraph 113 of the First Amended Complaint, because (i) Energizer is not in possession, custody, or control of "all" documents in existence that may support or contradict the statement because it turns in large part on third party consumers; and (ii) discovery is only now underway.

Subject to and without waiving the foregoing objections, Energizer directs Defendant to the following paragraphs of its First Amended Complaint (ECF No. 29): ¶ 50, ¶¶ 55-57, which provide images of various consumer reviews reflecting their confusion and disappointment in batteries sold by Defendant with the Energizer mark, and the degradation of goodwill that is occurring as a result of Defendant's conduct.   Energizer will seasonably supplement this response if additional documents are identified.

**REQUEST NO. 39**

All documents that support or contradict Plaintiff's statement that "Energizer batteries bearing the 'Not for Retail Trade' designation are not authorized to be sold directly to consumers ...." (Am. Compl. ¶ 32).

**RESPONSE TO REQUEST NO. 39**

Energizer objects to Request No. 39 to the extent that it suggests Energizer is required to prove a negative, i.e., that it does <u>not</u> permit the sale of any batteries to consumers with a "Not for Retail Trade" designation, through documentary evidence.   Energizer can and will provide testimony to support that it does <u>not</u> sell any batteries to consumers with a "Not for Retail Trade" designation.

Subject to and without waiver of the foregoing objections, Energizer will produce non-privileged, responsive documents identified pursuant to a reasonable inquiry, if any.

**REQUEST NO. 40**

All documents and communications concerning any customer complaints or inquiries concerning Energizer Products, including any complaints or inquiries concerning counterfeit products, knockoff products, used products, defective products, damaged products, any quality issues, and/or warranty.

**RESPONSE TO REQUEST NO. 40**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products." The remainder of Energizer's response to Request No. 40 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 40 as seeking irrelevant information and being exceedingly overbroad in that it does not seek customer complaints or inquiries regarding Energizer batteries *sold by Defendant* but every single document regarding every single complaint or inquiry Energizer has received on any one of its billons of batteries sold every year, dating back 7 years. There is no conceivable use to such a voluminous amount of information unrelated to Defendant or the batteries it sells.

Subject to and without waiving the foregoing objections, Energizer directs Defendant to the following paragraphs of its First Amended Complaint (ECF No. 29): ¶ 50, ¶¶ 55-57, which provide images of various consumer reviews reflecting their confusion and disappointment in batteries sold by Defendant with the Energizer mark, and the degradation of goodwill that is occurring as a result of Defendant's conduct. Energizer will seasonably supplement this response if additional documents are identified.

**REQUEST NO. 41**

All documents concerning listings of Energizer Products on Amazon, or any other online marketplace, including eBay, Jet, Rakuten or Walmart Marketplace.

**RESPONSE TO REQUEST NO. 41**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Request No. 41 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 41 to the extent that it seeks information protected by the attorney client-privilege and attorney work-product doctrine.

Energizer further objects to Request No. 41 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  The sale of Energizer batteries by any person or entity other than Defendant or its sources is completely irrelevant and would not inform any pertinent fact in this litigation.

Energizer also objects to Request No. 41 because it is exceedingly overbroad.  As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries.  As written, this Request seeks information pertaining to every single Energizer battery product listed for sale anywhere on the internet by any third party. Heightening this over breadth is the fact that Request No. 41 is not limited in geographic scope and seeks documents for 7 years.  There is no allegation that Defendant sells Energizer-brand batteries anywhere outside the United States.  As such, Defendant has no basis for failing to set a

66

geographic limit on this Request.  And as to time, Energizer has limited its own discovery propounded on Defendant to October 2018 to the present.  Absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Request No. 41 also presents not only a severely undue burden, but an impossible task. There could be millions of third-party product listings of Energizer products on online marketplaces globally, and that number is increasing and decreasing at any given time. Defendant is essentially asking Energizer to search the entire internet.  The applicable Federal and Local Rules will not support such an ask, particularly where Defendant is free to do so itself.

**SUPPLEMENTAL OBJECTION & RESPONSE:**     During the parties' Meet & Confers, Energizer explained that this request is so broad as to seek a scraping of the entire internet, something MBS could do itself.  MBS clarified that it was searching for information regarding "the creation of listings on Amazon," but then represented that there was more to it than that, and committed to articulating a more narrow, clear explanation for what MBS seeks through Request No. 41 in an email.[12]   Once again, however, MBS did not follow up with this additional clarification and/or narrowing.

In its June 30th Letter, MBS ultimately confirmed that it is seeking "all documents in Energizer's possession, custody or control that relate to the creation of, modification of, or comments to listings of Energizer Products on Amazon, or any other online marketplace."  *See* June 30, 2020 Letter.

Based on this clarification and revision to Request No. 41, and subject to and without waiver of Energizer's original objections, Energizer states that it will search for and produce

---

[12] *See* 6/1/2020 Transcript at 55:7-11("MR. BERKOWITZ:  We can always -- you know, I'm happy to put this into an e-mail and try to, you know -- and narrow it down, and, you know, we can -- if we can work on the language, we'll work on the language.").

non-privileged sample documents "that relate to the creation of, modification of, or comments to listings of Energizer Products on Amazon" if any exist, in accordance with the parties' agreement.

**REQUEST NO. 42**

All documents and communications relating to the distribution, advertising, offer for sale and sale of Energizer Products by or through Amazon, including all agreements between Plaintiff and Amazon relating to the distribution, advertising, offer for sale and sale of Energizer Products.

**RESPONSE TO REQUEST NO. 42**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products." The remainder of Energizer's response to Request No. 42 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Request No. 42 to the extent that it seeks information protected by the attorney client-privilege and attorney work-product doctrine.

Energizer further objects to Request No. 42 because it is irrelevant to the claims and defenses in this action. This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. Energizer's sale of batteries to Amazon, or any other third party other than Defendant or Defendant's sources, is completely irrelevant and would not inform any pertinent fact in this litigation.

Energizer also objects to Request No. 42 because it is exceedingly overbroad in that it is not limited to seeking documents related to Defendant or Defendant's sales of Energizer batteries on Amazon. As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries. As written, this Request seeks information pertaining to Energizer's communications and business dealings with Amazon relating to anything and everything, regardless of whether it has anything do with Defendant or the products being sold by Defendant on Amazon. Request No. 42 is also overbroad because it purports to seek documents from November 15, 2013, to present, with no explanation or basis for such an extensive time frame. Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Subject to and without waiver of the foregoing objections, Energizer states it will produce non-privileged, responsive documents related to Defendant's listing of Energizer batteries on Amazon, if any.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  Energizer and MBS agreed during the June 1, 2020 Meet & Confer that a single representative purchase order for Amazon's purchase of products from Energizer would satisfy this Request.[13]

Pursuant to that agreement, and subject to and without waiver of Energizer's original objections as to the broader Request as drafted, Energizer states that it will produce a sample purchase order for Amazon's purchase of Energizer-branded batteries from Energizer.

---

[13] *See* 6/01/2020 Transcript at 57:7-13 ("MR. BERKOWITZ:  No, I don't think we -- we don't need the POs.  There's -- if you can give us -- to  the extent that there's terms on the PO, we would want one sample PO.   MR. FINNERTY:  Okay.  MR. BERKOWITZ:  All right? MR. FINNERTY:  Yep.").

Dated: July 24, 2020                    By:   */s/  Emily E. Gianetta*
                                              Christopher S. Finnerty (*pro hac vice*)
                                              chris.finnerty@klgates.com
                                              Jennifer J. Nagle (*pro hac vice*)
                                              jennifer.nagle@klgates.com
                                              Emily E. Gianetta (*pro hac vice*)
                                              emily.gianetta@klgates.com
                                              K&L GATES LLP
                                              State Street Financial Center
                                              1 Lincoln Street
                                              Boston, MA 02111
                                              T: (617) 261-3100
                                              F: (617) 261-3175

                                              Priya Chadha
                                              priya.chadha@klgates.com
                                              K&L Gates LLP
                                              599 Lexington Avenue
                                              New York, New York 10022
                                              Tel.: (212) 536-3905
                                              Fax: (212) 536-3901

                                              *Attorneys for Plaintiff Energizer Brands, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2020, I served a true and correct copy of the foregoing

document upon counsel of record for Defendant by electronic mail, as agreed by the Parties.

By:   */s/ Emily E. Gianetta*
            Emily E. Gianetta