# Exhibit C



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


--------------------------------------------------X

ENERGIZER BRANDS, LLC,

                    Plaintiff,              Civil Action No.  No. 19-CV-6486-AMD-CLP

     v.

MY BATTERY SUPPLIER, LLC,

                  Defendant.

-------------------------------------------------- X

**ENERGIZER BRANDS, LLC'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Energizer Brands, LLC ("Energizer" or "Plaintiff") hereby provides its Supplemental Responses ("Supplemental Responses") to the First Set of Interrogatories served by Defendant My Battery Supplier, LLC ("MBS" or "Defendant") (the "Interrogatories").  **These Supplemental Responses contain the full text of Energizer's initial objections and responses; all supplemental objections and responses are clearly noted herein as a "SUPPLEMENTAL OBJECTION AND/OR RESPONSE."**

Energizer's Supplemental Responses to the Interrogatories are provided consistent with the obligations set forth in the Federal Rules of Civil Procedure ("Federal Rules") and the Local Rules of the Eastern District of New York ("Local Rules"), notwithstanding any requests in the Interrogatories that purport to impose obligations different therefrom.  In providing its Supplemental Responses to the Interrogatories, Energizer has assigned to each word its everyday meaning and has construed the language of each request in light of the scope of discovery

permitted by the Federal and Local Rules.

Energizer's search for information relevant to issues in this action is continuing. Energizer's Supplemental Responses to Defendant's Interrogatories are based only upon such information that is available to Energizer at the time of this response. Further investigation in this action may disclose additional information or documents that are requested by Defendant or that bear on Energizer's objections. Energizer reserves the right to modify or supplement any and all of its initial objections and responses, as well as its Supplemental Responses, to Defendant's Interrogatories as additional information or documents are obtained or become available or known to Energizer.

The provision of any information by Energizer in these Supplemental Responses, and particularly the provision of information that may be confidential or proprietary in nature or that otherwise constitutes Energizer's protected commercial, financial, competitively sensitive, and/or trade secret information, is expressly contingent upon, and subject to, the Court's entry of an appropriate protective order to protect the sensitive nature of any such information.

All evidentiary objections, including objections as to relevance, materiality, and admissibility, and any and all objections on the basis of work-product doctrine and attorney-client privilege, are expressly reserved.

## SUPPLEMENTAL OBJECTIONS TO DEFINITIONS

Energizer objects as follows to the Definitions set forth by Defendant in the Interrogatories:

1.      Energizer objects to the definition of "Energizer Products," which Defendant defines as "any item or product marketed or sold under the Energizer Marks." Energizer offers for sale and sells a variety of products under the Energizer Marks, including lighting products and various automotive products. The only products at issue in this case, however, are

Energizer-brand batteries.   There is no justification for defining the scope of "Energizer Products" beyond that.   Moreover, in response to Energizer's discovery requests to Defendant seeking information and documents related to Energizer-brand batteries, Defendant has objected and argues that it should only have to produce discovery related to an even more limited scope of products, specifically only Energizer "OEM" or "bulk-packaged" batteries that have been repackaged.   *See, e.g.*, Defendant's Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories and First Set of Requests for Documents.   Defendant's attempt to define "Energizer Products" in a way that far exceeds both the scope of products at issue and the scope of Defendant's own objections is unjustified.   Consistent with the Federal and Local Rules, Energizer will respond herein to the scope which it believes is appropriate, specifically Energizer-brand batteries.

**SUPPLEMENTAL OBJECTION:**   During the parties' June 22nd Meet & Confer, MBS proposed narrowing the definition of "Energizer Products" from including every single product sold under the Energizer Mark to all products that "include[] batteries marketed or sold under the Energizer Marks."   *See* June 30, 2020 Letter, at 1.   MBS articulated that it believes that products sold under the Energizer Mark — such as lighting products — are relevant if the packages also contain Energizer Mark batteries to be used with the product.   Energizer maintains that such products are irrelevant to the claims and defenses in this action, compiling records on such out-of-scope product lines would be unduly burdensome, and MBS's proposed definition of "Energizer Products" is accordingly disproportional to the needs of the case.   Energizer will respond to the Requests as previously stated — with respect to Energizer-brand batteries.

2.     Energizer objects to the definition of "OEM Batteries" as vague, ambiguous, and inconsistent with Energizer's actual product offerings.   Defendant defines "OEM Batteries"

("OEM" meaning "Original Equipment Manufacturer") as "any battery bearing one or more Energizer Marks and labelled 'Not for Retail Trade' or containing a similar designation."  Not all batteries sold to Original Equipment Manufacturers by Energizer are marked "Not for Retail Trade" and not all batteries marked "Not for Retail Trade" are sold only to Original Equipment Manufacturers.  The categorizations of batteries that Defendant has contrived are inconsistent with Energizer's business and, as such, it is not clear to Energizer what Defendant is seeking through use of this defined term.  Is Defendant seeking discovery regarding batteries sold by Energizer to Original Equipment Manufacturers?  Or discovery regarding batteries marked "Not for Retail Trade"?  In either case, Energizer does not maintain records categorized by such buckets.  But in any event, as drafted, this definition does not reasonably identify the discovery sought.  Energizer accordingly cannot respond to any Interrogatories turning on this definition.

**SUPPLEMENTAL OBJECTION:**  As explained above and as discussed during the parties' May 21, 2020 Meet & Confer, MBS's definitions for "retail," "bulk-packaged," and "OEM" batteries are not consistent with how Energizer's batteries are actually packaged and sold.  MBS represented, for example, that "bulk-packaged batteries" is meant to capture "batteries that are sold in bulk packaging."  5/21/20 Transcript at 10:10.  But as Energizer pointed out, MBS's definition of OEM batteries (any battery sold with a "Not for Retail Trade" designation) also implicates bulk-packaged batteries, so it is not clear which definition is meant to cover which category of batteries.  *Id*. at 10:11-11:6.  That is problematic because many of MBS's discovery requests ask for information specific to "OEM batteries" or "bulk-packaged batteries" — treating them as distinct, which is not always the case and leaves Energizer without

a proper understanding of what is being sought.  *See generally* Requests.[1]  MBS attempted to clarify by distinguishing between retail packages and bulk packages,[2] but that distinction (1) does not solve the bulk v. OEM issue, and (2) does not make sense, because Energizer sells retail packages of bulk-count batteries, at least within the e-commerce channel.[3]

Energizer agreed to revisit its internal categorization of batteries and offer definitions for use that are in line with how the various product categories are actually treated within Energizer and how records are kept.  Energizer did so and subsequently explained them to MBS during the June 22, 2020 Meet & Confer, as follows:

- "Retail Batteries" are Energizer-branded batteries intended for sale to consumers and sold in Retail Packaging, which means clamshells, blister packs, carded products which contain a peg hole, boxed products sold in a retail-ready tray to be used on a shelf display, or (for online retail products only) brown cardboard boxes, all of which packaging is heavily branded and includes consumer-facing information and Energizer's trademarks and logos, frequently (but not always) featuring the Energizer bunny.  For the avoidance of doubt, Energizer Industrial Batteries are not Retail Batteries, as they are not intended for resale to consumers.

- "OEM Batteries" are Energizer-branded batteries marked "Not for Retail Trade," which are sold directly to Original Equipment Manufacturers specifically for sale in connection with a separate product, which are not intended for resale on their own and are not sold in Retail Packaging.

---

[1] "Request(s)" refers to Defendant's First Set of Requests for the Production of Documents and Things to Plaintiff, dated March 25, 2020.  "Interrogatory or Interrogatories" refers to Defendant's First Set of Interrogatories to Plaintiff, dated March 25, 2020.

[2] 5/21/20 Transcript at 11:22-12:3 ("[W]e're not talking about the retail package that are sold to the consumer.  We're talking about . . . the larger cardboard boxes that would have larger numbers of batteries.  Not -- not the consumer products.").

[3] *See, e.g.*, Energizer AAA Batteries (48 Count), Triple A Max Alkaline Battery, available at: https://www.target.com/p/energizer-48pk-max-alkaline-aa-batteries/-/A-54142543?ref=tgt_adv_XS000000&AFID=google&fndsrc=tmnv&DFA=71700000064973782&CPNG=PLA_DVM%2B0060H00000r4Mw8QAE-Energizer-AO-GoogleSearch-2020-Batteries-Flight&adgroup=PLA_Energizer&LID=700000001393753pgs&network=g&device=c&location=9002004&gclid=CjwKCAjwjLD4BRAiEiwAg5NBFi0j8NpEHJ90cRhMd0opI3uGwUCX9UmEQFDU3BOeVn7xak49SycHhRoCDpcQAvD_BwE&gclsrc=aw.ds (last accessed July 21, 2020).

- "Bulk-Packaged Batteries" are Energizer-branded batteries that are not Retail Batteries or OEM Batteries.

MBS has insisted on use of its original definitions but those definitions render Energizer unable to respond because they are not accurate and do not translate to the information and records actually available.  Rather than not respond at all, Energizer's original objections and responses and these Supplemental Responses use the aforementioned Energizer definitions throughout, which accurately reflect Energizer's actual product categorizations.

**SPECIFIC SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO INTERROGATORIES**

Subject to and without waiving the foregoing objections to the noted definitions, Energizer provides the below Supplemental Responses to the individually numbered Interrogatories:

**INTERROGATORY NO. 1**

Identify each direct customer of Energizer Products, between 2013 and the Present, and, for each, state whether they are an Authorized Reseller.

**RESPONSE TO INTERROGATORY NO. 1**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Interrogatory No. 1 is based on a narrowed interpretation of "Energizer Products" as related to Energizer-brand batteries only.

Energizer objects to Interrogatory No. 1 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  The

identity of the persons or entities to which Energizer sells its products is completely irrelevant and would not inform any pertinent fact in this litigation.

Energizer further objects to Interrogatory No. 1 because it is exceedingly overbroad insofar as it seeks information regarding sales to entities other than the Defendant or the source(s) from which Defendant is purchasing batteries bearing the Energizer mark. As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries, including where those batteries come from. Defendant's request for information regarding every direct customer of Energizer, regardless of whether that direct customer is a participant in Defendant's supply chain, is unreasonable in scope.

Interrogatory No. 1 is also overbroad because it is not limited in geographic scope, and seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame. Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of global records is overbroad.

Interrogatory No. 1 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than *7.5 billion* batteries a year into retailers, channels, and markets around the world. There is no central repository of all "direct customer" names that can be mined for the type of extensive list sought by Defendant. Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually compile information regarding every direct customer it sells to around the globe, from many internal sources, and to then determine their authorized reseller status (which would derive from yet different internal sources). This burden is not justified by any level of proportionality, since there is no conceivable relevance to this information.

Subject to and without waiver of the foregoing objections, Energizer states that, if Defendant identifies the entities or persons in its supply chain for Energizer batteries, Energizer can and will identify whether those entities or persons are direct customers of Energizer and if they are authorized resellers.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  MBS has itself taken the position that the handful of resellers from which *it* purchases Energizer batteries are not relevant to this action (and refuses to produce that information to Energizer).  Yet, MBS simultaneously argues that the entire universe of Energizer's direct customers is relevant and should be turned over.  MBS has failed to articulate a cogent explanation for such a disproportionate and hypocritical position.  Indeed, despite multiple Meet & Confers, MBS repeatedly states that it "needs to know the full scope of Energizer's direct customers during the relevant time period . . . so that MBS can prepare its defenses in this case," but has not identified a single defense that would be informed by that information.

At the May 21st Meet & Confer, MBS represented that it needed Energizer's direct customer list so that it could subpoena all of those customers "for agreements that they have with Energizer and/or representative samples of the products that they sell so that . . . we can see how those products are resold or packaged by those customers of Energizer."  5/21/20 Transcript at 36:17-23.  When pressed to explain the relevance of any such agreements or samples, MBS further stated that "how [Energizer is] authorizing its products to be sold on the marketplace" is relevant to MBS's defense.  *Id*. at 36:24-37:8.  MBS, however, does not need Energizer's entire direct customer list to (i) ascertain how products are resold or packaged or (ii) identify what restrictions Energizer puts on its customers' resale of batteries.

As to (i) (how products are resold or packaged), Energizer has agreed to put together the Sample SKU Lists (*see* Supplemental Response to Document Request No. 1), which will identify each general SKU of the relevant categories of Energizer-branded batteries currently sold in the United States, along with sample imagery of the front and back of the packaging for each. This plainly satisfies MBS's stated need to "see how [Energizer's] products are resold or packaged by those customers of Energizer" (5/21/20 Transcript at 36:17-23). This directly provides the information MBS is seeking and is far more efficient and proportional than demanding Energizer's entire roster of customers with the intended purpose of sending third party subpoenas to every single one of them.

As to (ii) (what restrictions Energizer puts on resale of its batteries), Energizer offered as a measure of compromise to search for and produce a representative sample of agreements, invoices, and/or other form documents exchanged with its customers that reflect the scope of restrictions that Energizer places on the repackaging of its Energizer-branded batteries, if any exist, subject to redaction of the customer names (*see* Supplemental Response to Document Request No. 13). Such representative agreements and materials would provide the information MBS is seeking in a proportional way, yet MBS has rejected this compromise offer by Energizer. Energizer's offer remains open on this front and Energizer further states that, in instances where its customer relationships are not contractual, Energizer's Customer Supply Terms and Conditions apply, which are accessible at: https://www.energizerholdings.com/company/partners-suppliers/customer-terms-conditions.

## INTERROGATORY NO. 2

Identify each instance, between 2013 and the Present, in which Plaintiff has sold OEM Batteries or bulk-packaged batteries, including identifying the product Plaintiff sold (by UPC or

other product designation), the quantity Plaintiff sold, the date Plaintiff sold it, and to whom Plaintiff sold it.

**RESPONSE TO INTERROGATORY NO. 2**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot materially respond to this Interrogatory given the ambiguity of the definition and that Energizer does not know what is being requested.  This is magnified by Defendant's use of the phrase "bulk-packaged batteries," which is also vague and undefined.  It is not clear what each term ("OEM Batteries" versus "bulk-packaged batteries") means or how (or if) those two suggested categories overlap. Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer also objects to Interrogatory No. 2 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers.  A comprehensive list of every single battery sold by Energizer for 7 years, whether "OEM Batteries," "bulk-packaged batteries," or otherwise, is completely irrelevant and would not inform any pertinent fact in this litigation.  The Interrogatory is not tailored, for example, to confirming whether Energizer sells the specific SKUs, combinations, or types of Energizer batteries sold by Defendant (which Defendant is refusing to identify), or to what specific types of batteries Energizer has sold to Defendant's sources for Energizer batteries.

Energizer further objects to Interrogatory No. 2 because it is exceedingly overbroad insofar as it seeks information regarding sales to entities other than the Defendant and regarding

10

battery products other than those sold by Defendant.  As previously explained, the only relevant information in this case pertains to Defendant's online sale of materially different Energizer batteries.  Yet, this Interrogatory has no connection to Defendant, its sources, or its sales. Interrogatory No. 2 is also overbroad because it is not limited in geographic scope, and it seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of global records is overbroad.

Interrogatory No. 2 also presents a severely undue burden, to which Energizer objects. Energizer is a global company that sells more than *7.5 billion* batteries a year into retailers, channels, and markets around the world.  As written, this Interrogatory purports to require Energizer to collect a list of every battery product sold in the entire world for the last 7 years, with SKUs, pricing, quantities, dates of purchase, and (like Interrogatory No. 1) the direct customer who made the purchase.  There is no central repository from which Energizer can simply pull a list of every single global sale.  Even if such an exercise were theoretically possible, it would present an excessive and undue burden for Energizer to manually compile information regarding every sale around the globe for 7 years, from many internal sources, and to then pull together the details requested by this Interrogatory.  This burden is not justified by any level of proportionality, since there is no conceivable relevance to this data.

Subject to and without waiver of the foregoing objections, Energizer states that, if Defendant identifies the entities or persons in its supply chain for Energizer batteries, and the specific Energizer battery products it has purchased or sold since October 2018, Energizer can and will identify whether it sold those Energizer battery products to any entity or person in

Defendant's supply chain during the same time period.

**SUPPLEMENTAL OBJECTION & RESPONSE:**   Energizer incorporates in full its Supplemental Response to Interrogatory No. 1.

**INTERROGATORY NO. 3**

State when Plaintiff first became aware of Defendant's offering for sale or sale of Energizer Products, including: (1) the employees or agents of Plaintiff who became aware; (2) the specific Energizer Products that Plaintiff believed were being offered for sale or sold by Defendant; and (3) all actions taken by Plaintiff in response.

**RESPONSE TO INTERROGATORY NO. 3**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Interrogatory No. 3 is based on a narrowed interpretation of "Energizer Products" as related to Energizer batteries only.

Energizer objects to Interrogatory No. 3 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.

Interrogatory No. 3 also presents not only a severely undue burden, but an impossible task.  At the moment, Energizer has more than 6,500 employees.  There is no way for Energizer to know when and whether any one of those thousands of employees around the world, or any of the additional thousands of employees it has had since 2013, might have learned that Defendant was selling Energizer batteries online.  This would require a search of every single employee's email for 7 years, looking for a needle in the haystack.  Such a burden outweighs any need Defendant might have for this information.  Indeed, Defendant has argued that it has purchased Energizer batteries from Energizer in the past (which is not true to Energizer's knowledge) and that Energizer has known about Defendant's resale of Energizer batteries for some time.  To

make those arguments, Defendant must already have information to support them and accordingly there is no justification for a global, 7-year review of the email of thousands of Energizer employees.

Subject to and without waiver of the foregoing objections, Energizer states that it will supplement this response with information regarding Energizer's identification of the conduct of Defendant underlying this lawsuit, to the extent not protected by the attorney-client privilege and attorney work-product doctrine.

**SUPPLEMENTAL OBJECTION & RESPONSE:**  As of the date of these Supplemental Responses, Energizer has confirmed that Defendant was identified for Energizer as an online seller of Energizer batteries in or about April 2017 by third-party MarketTrack.   MarketTrack sent a letter to Defendant regarding its improper online sale of Energizer batteries, and Defendant provided a response.   As of the date of these Supplemental Responses, the only Energizer employee that has been identified as having been aware of MarketTrack's identification of MBS as an online seller of Energizer batteries in 2017 was Roger Fong.

**INTERROGATORY NO. 4**

State when Plaintiff first became aware that OEM Batteries were being offered for sale, or sold, on online marketplaces (e.g., Amazon, eBay, Walmart marketplace), including: (1) the employees or agents of Plaintiff who became aware; (2) the specific product that Plaintiff believed was being offered for sale or sold; and (3) all actions taken by Plaintiff in response.

**RESPONSE TO INTERROGATORY NO. 4**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "OEM Batteries" and states that it cannot fully respond to this Interrogatory given the ambiguity of the definition and that Energizer does not know what is being requested.

Energizer objects to Interrogatory No. 4 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine. Energizer also objects to this Interrogatory to the extent that it is duplicative of Interrogatory No. 3 as to sales of Energizer batteries by Defendant specifically.

Energizer further objects to Interrogatory No. 4 because it is irrelevant to the claims and defenses in this action. This action turns on Defendant's purchase of batteries bearing the Energizer marks from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer marks that are materially different from any genuine Energizer batteries sold to consumers. The sale of Energizer batteries by any person or entity other than Defendant or its sources, whether "OEM Batteries" or otherwise, is completely irrelevant and would not inform any pertinent fact in this litigation.

Energizer also objects to Interrogatory No. 4 because it is exceedingly overbroad. As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries. As written, this Interrogatory seeks information pertaining to sales of "OEM Batteries" by Energizer, its Authorized Distributors and Resellers, all of its direct customers worldwide, and an ever-changing and largely unknown universe of unauthorized resellers, none of which are related to Defendant or its sources for Energizer batteries. Interrogatory No. 4 is additionally overbroad because it is not limited in geographic scope, and it seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame. Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Interrogatory No. 4 also presents not only a severely undue burden, but an impossible task. There could be millions of third-party product listings of Energizer products on online marketplaces globally, and that number is increasing and decreasing at any given time. At the moment, Energizer has more than 6,500 employees. Energizer has no possible way of knowing the first time any one of those thousands of employees around the world, or any of the additional thousands of employees it has had since 2013, might have learned that one of millions of online product listings was offering "OEM Batteries" for resale, and as such cannot respond to Interrogatory No. 4.

**SUPPLEMENTAL OBJECTION & RESPONSE:** In its June 5, 2020 letter to Energizer, with regard to Interrogatory Nos. 4 and 5, MBS challenged Energizer's undue burden objection as "disingenuous" and stated that "Energizer refused to confirm whether it had made any inquiry of the relevant departments, e.g., Energizer's sales and e-commerce team," and that "Energizer has not even inquired with the individuals previously identified in MBS's Initial Disclosures and other correspondence." *See* June 5th Letter, at 4. That is entirely <u>false</u>. All of the individuals named in MBS's Initial Disclosures, as well as various individuals identified by Energizer, were contacted as part of Energizer's reasonable investigation into this Interrogatory (which was confirmed to MBS during the June 1st Meet & Confer, 6/1/20 Transcript at 42:16-18). Despite Energizer's good-faith investigation, it was not able to identify the very discrete request made by MBS, specifically when Energizer as a company first learned of the sale of OEM batteries on online marketplaces.

The individuals mentioned by MBS in its June 5th letter—Roger Fong, Jordan Lonergan, and James Packer—were not identified by MBS in its Initial Disclosures, but were promptly looked into after MBS mentioned them. Based on Mr. Fong's position, Energizer determined

that it was reasonable to inquire with him about any potential knowledge responsive to this Interrogatory, and the information supplemented herein (as to Interrogatory No. 3) reflects, in part, information from Mr. Fong.   As to Mr. Lonergan and Mr. Packer, based upon their positions and the scope of their job duties, Energizer determined that they are not reasonably likely to have relevant information.  It appears that MBS is identifying them now based solely on a LinkedIn search for any Energizer employees.   That does not make them relevant and Energizer will not go on a wild goose chase interviewing and investigating every Energizer employee name that MBS finds on the Internet.[4]

Subject to and without waiver of its original objections, Energizer incorporates in full its Supplemental Response to Interrogatory No. 3, which provides relevant information regarding Energizer's knowledge that Defendant was selling Energizer-brand batteries on online marketplaces.   Energizer cannot otherwise pin-point when the company as a whole became aware that its OEM Batteries were being sold in online marketplaces generally.

**INTERROGATORY NO. 5**

State when Plaintiff first became aware that bulk-packaged Energizer Products were being offered for sale, or sold, on online marketplaces (e.g., Amazon, eBay, Walmart marketplace), including: (1) the employees or agents of Plaintiff who became aware; (2) the specific product that Plaintiff believed was being offered for sale or sold; and (3) all actions taken by Plaintiff in response.

---

[4] If MBS has an actual reason to believe that Lonergan, and/or Packer have information relevant to this action (beyond finding them on LinkedIn), MBS should confirm that it will immediately supplement its Initial Disclosures to name them and their expected area of knowledge, as required by Rule 26(a). (Fong should be disclosed in a supplement to MBS's Initial Disclosures as well.)  Energizer will, of course, investigate any individuals that are added to MBS's Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 5**

Energizer incorporates by reference, as if fully set forth herein, its objection to Defendant's definition of "Energizer Products."  The remainder of Energizer's response to Interrogatory No. 5 is based on a narrowed interpretation of "Energizer Products" as related to Energizer batteries only.

Energizer objects to Interrogatory No. 5 to the extent that it seeks information protected by the attorney-client privilege and attorney work-product doctrine.  Energizer also objects to this Interrogatory to the extent that it is duplicative of Interrogatory No. 3 as to sales of Energizer batteries by Defendant specifically.

Energizer also objects to Interrogatory No. 5 because the phrase "bulk-packaged batteries" is vague and undefined and Energizer does not know what Defendant means by it. Defendant's use of the phrase "bulk-packaged batteries" is especially vague and ambiguous given its misdefinition of "OEM Batteries" as explained above, because it is not clear how (or if) those two suggested categories overlap.  Energizer does not know what distinction Defendant is making between these two terms and accordingly does not know what is being requested here.

Energizer further objects to Interrogatory No. 5 because it is irrelevant to the claims and defenses in this action.  This action turns on Defendant's purchase of batteries bearing the Energizer mark from an unknown source and in an unknown state, Defendant's material alterations of those batteries following receipt, and Defendant's online resale of batteries bearing the Energizer mark that are materially different from any genuine Energizer batteries sold to consumers.  The sale of Energizer batteries by any person or entity other than Defendant or its sources, whether bulk-packaged batteries or otherwise, is completely irrelevant and would not inform any pertinent fact in this litigation.

17

Energizer also objects to Interrogatory No. 5 because it is exceedingly overbroad.  As previously explained, this case pertains to Defendant's online sale of materially different Energizer batteries.  As written, this Interrogatory seeks information pertaining to sales of "bulk-packaged" batteries by Energizer, its Authorized Distributors and Resellers, all of its direct customers worldwide, and an ever-changing and largely unknown universe of unauthorized resellers, none of which are related to Defendant or its sources for Energizer batteries. Interrogatory No. 5 is additionally overbroad because it is not limited in geographic scope, and it seeks information dating back 7 years, with no explanation or basis for such a global reach and extensive time frame.  Energizer has limited its own discovery propounded on Defendant to October 2018 to the present and, absent some basis for expanding discovery beyond that, a request for 7 years of records is overbroad.

Interrogatory No. 5 also presents not only a severe burden, but an impossible task.  There could be millions of third-party product listings of Energizer products on online marketplaces globally, and that number is increasing and decreasing at any given time.  At the moment, Energizer has more than 6,500 employees. Energizer has no possible way of knowing the first time any one of those thousands of employees around the world, or any of the additional thousands of employees it has had since 2013, might have learned that one of millions of online product listings was offering "bulk-packaged" batteries for resale, and as such cannot respond to Interrogatory No. 5.

**SUPPLEMENTAL  OBJECTION  &  RESPONSE:**   Energizer  incorporates  in  full  its Supplemental Objections & Responses to Interrogatory Nos. 3 and 4.

As to objections:


Dated: July 24, 2020          By:    */s/ Emily E. Gianetta*
                                     Christopher S. Finnerty (*pro hac vice*)
                                     chris.finnerty@klgates.com
                                     Jennifer J. Nagle (*pro hac vice*)
                                     jennifer.nagle@klgates.com
                                     Emily E. Gianetta (*pro hac vice*)
                                     emily.gianetta@klgates.com
                                     K&L GATES LLP
                                     State Street Financial Center
                                     1 Lincoln Street
                                     Boston, MA 02111
                                     T: (617) 261-3100
                                     F: (617) 261-3175

                                     Priya Chadha
                                     priya.chadha@klgates.com
                                     K&L Gates LLP
                                     599 Lexington Avenue
                                     New York, New York 10022
                                     Tel.: (212) 536-3905
                                     Fax: (212) 536-3901

                                     *Attorneys for Plaintiff Energizer Brands, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2020, I served a true and correct copy of the foregoing document upon counsel of record for Defendant by electronic mail, as agreed by the parties.


By:   */s/  Emily E. Gianetta*
                Emily E. Gianetta