# Exhibit G

| | |
|---|---|
| TELEPHONIC CONFERENCE | August 11, 2020 |
| ENERGIZER BRANDS vs MY BATTERY SUPPLIER, LLC | 1 |

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE EASTERN DISTRICT OF NEW YORK

 3

 4                  CASE NO: 1:19-CV-6486

 5   ENERGIZER BRANDS, LLC,

 6        Plaintiff,

 7      vs

 8   MY BATTERY SUPPLIER, LLC,

 9        Defendant.

10

11   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

12

13              TELEPHONIC CONFERENCE

14                IN THE MATTER OF

15              ENERGIZER BRANDS, LLC

16                      vs

17            MY BATTERY SUPPLIER, LLC

18

19                 August 11, 2020

20               12:33 p.m.-1:21 p.m.

21

22

23

24   Deborah J. Bateman, Court Reporter
```



*800.211.DEPO (3376)*
*EsquireSolutions.com*

```
 1                  APPEARANCES OF COUNSEL

 2
      On Behalf of the Plaintiff:
 3
              JENNIFER JANEIRA NAGLE, ESQ.
 4            CHRISTOPHER S. FINNERTY, ESQ.
              EMILY E. GIANETTA, ESQ.
 5            K&L GATES
              State Street Financial Center
 6            One Lincoln Street
              Boston, Massachusetts 02111
 7            617.951.9197
              jennifer.nagle@klgates.com
 8            chris.finnerty@klgates.com
              emily.gianetta@klgates.com
 9
10    On Behalf of the Defendant:

11            SANDRA A. HUDAK, ESQ.
              MARK BERKOWITZ, ESQ.
12            AMSTER ROTHSTEIN & EBENSTEIN LLP
              90 Park Avenue
13            New York, New York 10016
              212.336.8063
14            shudak@arelaw.com
              mberkowitz@arelaw.com
15

16

17

18

19

20

21

22

23

24
```



```
 1              TELEPHONIC CONFERENCE BETWEEN PARTIES
 2                       August 11, 2020
 3
 4             MS. NAGLE:  So thanks for making some time.  I
 5   hope you guys both had a good vacation last week.  I just
 6   wanted to connect and confer on a couple of items which I
 7   sent you some e-mails on.  But I think the first one I
 8   want to -- I don't know that it really requires too much
 9   discussion at this point -- is related to the protective
10   order.
11             As you saw in my e-mail from before you all
12   went out on vacation, we are proposing entry of the
13   Court's -- the form order.  We know we had extensive
14   discussions on this back in the spring.  I think we all
15   expected some guidance from the Court after the May 20
16   hearing.  It has not come yet.  And at this stage, you
17   know, MBS hasn't produced anything yet, and we really
18   think this -- we need to press this issue, and we think
19   the form order is sufficient to satisfy what's at issue
20   in this case.
21             So have you had an opportunity to look at
22   that, and are you agreeable to that form or not?
23             MR. BERKOWITZ:  Just specifically, which judge
24   does this order come from?  There's no -- as far as I
```



```
 1   request for specific communications.
 2             MR. BERKOWITZ:  Right.  The way we saw it was,
 3   you know, that we would basically hold off on doing
 4   e-mail until after other documents were produced,
 5   invoices and things like that, and then we would deal
 6   with e-mail in one shot.  We'd, you know, agree on some
 7   sort of time frame for staging a list of custodians,
 8   exchanging, you know, search terms, exchanging, you know,
 9   maybe the number of hits, and then doing a production.
10   That's how we've done it in the past.
11             MS. NAGLE:  Yeah.  Well, what do you mean by
12   "exchanging"?  Because you have -- there's no -- you've
13   not asked for any e-mails, specific things from us, so --
14             MR. BERKOWITZ:  I'm sure we have requests that
15   would implicate communi- -- that request communications.
16   So we have a request that covers communications.  So, I
17   mean, is Energizer going to go perform e-mail searchings
18   in response to all those?
19             MS. NAGLE:  No.  But -- so to the extent
20   you've asked for something, like, asked for
21   communications that's, like, something very specific, we
22   have identified the communication and would be producing
23   it, I mean, subject to wherever we are on objections and
24   all of that.  I mean, this is not a case where either
```



1   side has to do a deep ESI dive, and so I think we're just
2   maybe crossing paths here.  But the idea that we're not
3   doing sort of a massive e-mail search just means that the
4   parties are not going to search their entire e-mail
5   system based on keywords.  That's not the expectation
6   here.  But if you ask me, for example, for communication
7   regarding, you know, a specific purchase, I'm going to go
8   look for that communication and I'm going to produce it
9   to you.  And that does not require that I send you
10  custodians in advance or date ranges in advance.  It's
11  essentially a self-select.  Like, I know where that
12  document is or where to go for it, and I'm going to go
13  get it.
14            MR. BERKOWITZ:  Right.  But that's also not
15  always possible.  You know, we don't know over the past
16  however many years whether there was a particular
17  communication or not.  I mean, if we say all
18  communications relating to My Battery Supplier, what's
19  Energizer going to do with that?
20            MS. NAGLE:  We would -- we would do an
21  internal investigation, as we've done, and figure out
22  who's had communications with My Battery Supplier.
23            MR. BERKOWITZ:  Have you -- you would have
24  them do a search, and have -- what would --



```
 1                MS. NAGLE:  I mean, Mark, you've asked a lot
 2    of questions about that, and we've interviewed a lot of
 3    people, and that's exactly what --
 4                MR. BERKOWITZ:  I --
 5                MS. NAGLE:  -- we've done.  We've said, Have
 6    you talked --
 7                MR. BERKOWITZ:  I don't know that.  I'm
 8    asking --
 9                MS. NAGLE:  We've told you that a couple of
10    times now.  But, yeah, if there's somebody you've
11    identified, for example, Roger Fong, we would talk to
12    Roger Fong, and we'd say --
13                MR. BERKOWITZ:  Wait.
14                MS. NAGLE:  -- "Do you have any" --
15                MR. BERKOWITZ:  Somebody we've identified?
16                MS. NAGLE:  If it's somebody you've identified
17    in your initial disclosures, of course, we go talk to
18    those people.  We also go talk to other people we think
19    might reasonably have the information that you're
20    seeking, and of course, we ask those people if they have
21    communications or documents because it's our obligation
22    to do that.  What I'm concerned about is that you're not
23    doing that.
24                MR. BERKOWITZ:  No, no, no.
```



```
 1             MS. NAGLE:  And I think you've --
 2             MR. BERKOWITZ:  So -- let's talk it through --
 3             MS. NAGLE:  -- asked Brock to search his
 4   e-mail --
 5             MR. BERKOWITZ:  Let's talk it through how
 6   we're both going to do it.  So you've identified the
 7   people.  You've identified, generally, what you're
 8   looking for in terms of subject matter.  But have -- you
 9   know, what's Energizer doing in terms of searching?  Are
10   you just --
11             MS. NAGLE:  Okay.  Mark, we're getting off --
12   we're getting very off track here because you haven't
13   raised this with respect to our requests.  I asked for a
14   meet and confer to go over your requests.
15             MR. BERKOWITZ:  And it's a --
16             MS. NAGLE:  We have asked for examples --
17             MR. BERKOWITZ:  -- common issue.
18             MS. NAGLE:  No, it's not really a common issue
19   actually.  And I'm going to keep this call to our issues.
20   And if you'd like to have a call about your issues, we
21   can do that.  But you have raised the ESI protocol as a
22   reason you've not produced anything to us to date, and
23   it's been seven months.  And you have had the ESI
24   protocol for several months with our revisions and have
```



```
 1   MR. BERKOWITZ:  Okay.
 2   MS. NAGLE:  -- dates, Mark.
 3   I think that now we are done.
 4   MR. BERKOWITZ:  Excellent.
 5
 6   (Whereupon the meeting ended at 1:21 p.m.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```



```
 1              COMMONWEALTH OF MASSACHUSETTS

 2                     ESSEX COUNTY

 3

 4         I, Deborah J. Bateman, Notary Public, in and for

 5   the Commonwealth of Massachusetts, do hereby certify that

 6   the foregoing record, pages 1 through 52, inclusive, is a

 7   complete, accurate, and true transcription of my

 8   stenographic notes taken in the aforementioned matter to

 9   the best of my skills and ability.

10         I witness whereof, I have set my hand and seal

11   this 13th day of August, 2020.

12

13

14
                    [signature]
15

16         _____

17         Deborah J. Bateman, Notary Public in and

18         for The Commonwealth of Massachusetts

19         My Commission Expires: November 2, 2023

20

21

22

23

24
```

