UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
**ENERGIZER BRANDS, LLC**,                                         :
                                                                   :
                Plaintiff,                                        :
                                                                   :  **MEMORANDUM DECISION**
                                                                   :  **AND ORDER**
      – against –                                        :
                                                                   :  19-CV-6486 (AMD) (CLP)
                                                                   :
                                                                   :
**MY BATTERY SUPPLIER, LLC**,                                      :
                                                                   :
                Defendant.                                        :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       Before the Court is the defendant's motion to dismiss the amended complaint, in which the plaintiff seeks injunctive relief and monetary damages for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). For the following reasons, the motion is denied.

## BACKGROUND

       The plaintiff advertises, distributes and sells its batteries and other products to consumers under its numerous registered Energizer trademarks. (ECF No. 29 ¶¶ 17, 19-24.) The defendant sold and continues to sell Energizer batteries on various websites, without the plaintiff's consent to use the Energizer marks. (*Id.* ¶¶ 18, 26, 27.)

       According to the plaintiff, the Energizer batteries that the defendant sells are "unlike" genuine Energizer batteries. (*Id.* ¶ 28.) Specifically, the defendant offers battery packs that the plaintiff does not offer, sells batteries with a "Not for Retail Trade" designation to consumers, which the plaintiff does not do, packages the batteries differently, sells batteries without including "relevant customer-facing information, including consumer safety information, safe handling instructions, and other warnings that Energizer places on its consumer products," and sells batteries without including Energizer's warranty information. (*Id.* ¶¶ 5, 28-48.)

For example, the defendant has a product listing for "Energizer 100AA Lithium Long Lasting Leakproof Batteries;" a consumer ordering this product receives "loose batteries in a plain white box, each bearing a 'Not for Retail Trade' designation." (*Id.* ¶¶ 28-29.) The plaintiff, however, "does not sell 100 packs of lithium batteries," "does not package any of its products loosely in a white cardboard box" and "does not mark any batteries it sells to consumers as 'Not for Retail Trade.'" (*Id.* ¶¶ 30-32.) The defendant has product listings for other battery packs that the plaintiff does not produce or sell, including a "combination battery pack with 50 AA and 50 AA alkaline batteries," a "100 pack of AA alkaline E91 batteries," a "24 pack of 9 volt alkaline batteries" and a "24 pack of 9 volt lithium batteries." (*Id.* ¶¶ 33-40.)

The defendant uses "unauthorized packaging such as . . . plain white boxes and clear baggies," whereas the plaintiff uses blister packs with Energizer branding. (*Id.* ¶¶ 44-47 (including images showing examples of the plaintiff's and the defendant's packaging).) In addition to the differences in the "physical type of packaging," the defendant's packaging differs from the plaintiff's in that it "omits consumer safety information, safe handling instructions, and warning or warranty copy information." (*Id.* ¶ 48 (including images of this information displayed in the plaintiff's packaging).)

Because of these differences, the plaintiff "cannot ensure that its batteries . . . have not been tampered with or otherwise mishandled in a manner that causes the batteries to be unsafe for consumer use." (*Id.* ¶ 49.) Customers who purchased the defendant's battery offerings have been "disappointed and confused" when they receive the batteries in the defendant's packaging, and when they receive "dead or unsatisfactory products." (*Id.* ¶¶ 50, 55, 57.) In reviews, customers have commented on how the batteries arrived dead or died prematurely, appeared to be counterfeit or "fake Energizer," and had "horrible" and "shady" packaging. (*Id.* ¶¶ 9, 50-57.)

2

The plaintiff contacted the defendant "regarding its improper and illegal sale of Energizer batteries" on August 29, September 16 and September 20 of 2019. (*Id.* ¶ 60.) The defendant, however, continued to sell the products. (*Id.* ¶ 62.)

The plaintiff claims that the defendant's sale of the "materially different Energizer batteries" harms the plaintiff and consumers; it sells batteries "that may not be safe and effective," and causes "consumer confusion" and "the dilution of Energizer's goodwill and trade name" because consumers do not receive the high-quality, genuine products that they believe they are purchasing. (*Id.* ¶¶ 63-67.)

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Pleadings must be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## DISCUSSION

### I. The Defendant's Factual Allegations

With its motion to dismiss, the defendant submitted a declaration of its attorney, Mark Berkowitz, and exhibits. (ECF No. 34-2.)[1] The exhibits are photographs of the packaging for various Energizer battery packs sold through various websites. (ECF Nos. 34-3-34-10.) The

---

[1] The defendant also included a supplemental declaration and additional exhibits with its reply. (ECF No. 43-1.) The exhibits include a news article, a printout of the My Battery Supplier Amazon webpage, Energizer's Objections and Responses to the defendant's First Set of Requests for Admission, and a transcript of a pre-motion conference in another case, *Duracell U.S. Ops., Inc. v. Brach*, No. 18-CV-2338.

3

defendant relies on these exhibits throughout its memorandum, and asserts additional facts that are not part of the amended complaint. (*See* ECF No. 34-1.)

A court reviewing a Rule 12(b)(6) motion to dismiss "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (summary order) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)); *see also Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599 (E.D.N.Y. 2017) ("A document is integral to the complaint where the plaintiff (1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint.") (citations and quotation marks omitted); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) (a document is "incorporated by reference" if the complaint makes "a clear, definite and substantial reference to the document[ ]") (citation and quotation marks omitted).

When a party submits additional evidence in connection with a motion to dismiss that does not fall into these categories, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Potente v. Citibank, N.A.*, 282 F. Supp. 3d 538, 543 (E.D.N.Y. 2017) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)) (internal quotation marks omitted).

The photographs of the packaging for various Energizer battery packs sold through various websites are not integral to the complaint or incorporated in it by reference. Accordingly, I do not consider them in deciding this motion, nor do I consider facts cited by the defendant in its memoranda that do not appear in the amended complaint.

4

## II. Lanham Act Claims

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (citation, quotation marks and alterations omitted). "The standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125)"— "also referred to as [claims] for unfair competition"—"are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)." *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014) (citations, quotation marks and alterations omitted).

Under the first prong, a mark is entitled to protection if it is "inherently distinctive" or if it has acquired "secondary meaning," *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390 (2d Cir. 1995), and "[r]egistration of a mark . . . entitles the owner to a presumption that its mark is valid," *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000). The defendant does not contest that registration of the plaintiff's marks create a presumption of their validity, satisfying this prong of the test. (*See* ECF No. ¶¶ 19-24); *Easy Spirit, LLC v. Skechers U.S.A., Inc.*, No. 19-CV-3299, 2021 WL 247922, at *13 (S.D.N.Y. Jan. 26, 2021) (if the defendant "disputes neither the validity nor the incontestability of the . . . trademark . . . this Court 'need not tarry with the first prong of the infringement test'") (quoting *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004)).

"Under the second prong, the analytical framework varies depending on whether the infringing goods are counterfeit goods or, as in this case, gray market goods." *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826, 2019 WL 5696148, at *4 (E.D.N.Y. Sept. 30, 2019). "Although the term 'gray market goods' typically refers to goods manufactured outside the

5

United States which are imported without the consent of the trademark holder, courts in this Circuit have applied the legal standards from gray market goods cases to claims involving trademarked domestic goods sold by unauthorized retailers." *Coty Inc. v. Cosmopolitan Cosmetics Inc.*, 432 F. Supp. 3d 345, 351 (S.D.N.Y. 2020) (collecting cases). "Consumer confusion over counterfeit goods is typically measured by the nine *Polaroid* factors," *see Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), "[b]ut those factors are less helpful in the context of gray-market goods." *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826, 2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom. Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6 (2d Cir. 2016).

Under the "first sale doctrine," "there is no violation of the Lanham Act, despite the subject goods having been resold without the trademark holder's consent," if "the trademark holder authorized the first sale of the trademarked goods into the stream of or channels of commerce" and "the goods at issue are found to be genuine." *Hallmark Licensing, LLC v. Dickens, Inc.*, No. 17-CV-2149, 2020 WL 6157007, at *4 (E.D.N.Y. Oct. 21, 2020); *see also Abbott Lab'ys*, 2015 WL 10906060, at *5 ("Generally, the trademark holder does not have a right under the Lanham Act to control unauthorized resales as long as the goods sold are genuine, under the so-called 'first-sale doctrine.'"). There are exceptions, however, if the resold goods are "materially different" or "are sold in contravention of legitimate, established, substantial, and nonpretextual quality-control measures that the trademark holder follows." *Abbott Lab'ys*, 2015 WL 10906060, at *5; *see also Coty Inc.*, 432 F. Supp. 3d at 349-53.

Here, the plaintiff invokes the material difference exception, which "applies if the goods differ in a way that would likely be relevant to a consumer's decision to purchase them." *Coty Inc.*, 432 F. Supp. 3d at 350. "In the context of gray-market goods, in comparing the trademark

6

holder's product with the gray-market product, we apply a low threshold of materiality, requiring no more than a slight difference which consumers would likely deem relevant when considering a purchase of the product." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246 (2d Cir. 2009); *see also Coty Inc.*, 432 F. Supp. 3d at 351.

The plaintiff's pleadings meet this threshold. The plaintiff alleges differences in physical packaging, information included with the batteries and quality. It describes specific examples of these differences: "loose batteries in . . . plain white box[es]" and "clear baggies" rather than in blister packs, inclusion of the "Not for Retail Trade" designation on consumer batteries, omission of "safety information, safe handling instructions, and other warnings," and poor quality batteries. It also alleges that these differences matter to consumers. In addition, the complaint includes photographs showing these differences, as well as images of customer reviews in which consumers express confusion or dissatisfaction because of these differences. (ECF No. 29 ¶¶ 5, 28-48); *see Coty Inc.*, 432 F. Supp. 3d at 352 (the plaintiff's allegations that their "consumers expect consistent high-quality fragrance products," that "in many instances the removal of the Production Code and resulting mutilation of genuine product packaging degrades the products," and that the differences between the products "are obviously significant to the consuming public" were sufficient to allege "material physical differences" in "packaging"); *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5825, 2017 WL 6014330, at *4 (E.D.N.Y. Aug. 14, 2017) ("Even those consumers expecting a 'variation in packaging,' would at the very least find material (and be confused by) packaging" that, among other things, "ommitt[ed] important safety warnings."); *Duracell U.S. Operations, Inc. v. JRS Ventures, Inc.*, No. 17-CV-3166, 2018 WL 3920617, at *3 (N.D. Ill. Aug. 16, 2018) ("Plaintiff has adequately alleged material differences between the . . . batteries[:] . . . they are not covered by plaintiff's ten-year

7

warranty; they are not covered by plaintiff's Customer Guarantee; the packaging does not contain a description of the warranty; the packaging lacks warning labels to ensure the product is used safely; and the packaging does not contain U.S. customer service information."); *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 313 (S.D.N.Y. 2007) ("Differences in product packaging have been found to constitute material differences in a variety of gray goods cases.") (discussing cases); *but see TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 491-93 (S.D.N.Y. 2012) (finding "no plausible claim for trademark infringement or false designation of origin" because the plaintiff's complaint did not address "why differences in packaging are material" and did not make plausible allegations of "interference with warranty coverage").

The defendant cites *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924), in which the Supreme Court held that a reseller could repackage and sell the plaintiff's perfume. However, in *Coty* the plaintiff "d[id] not charge the defendant with adulterating or otherwise deteriorating the plaintiff's product," and was permitted to rebottle the perfume only if it included a disclosure about the rebottling on the product. *Id.* at 367. Here, by contrast, the plaintiff has alleged that there are material differences based on the packaging and the quality of the batteries, and that some actual customers were confused or dissatisfied based on the differences.

The defendant describes the alleged material differences as a "sleight of hand" because the plaintiff compares "bulk battery packaging with retail store packaging;" according to the defendant, "the relevant comparison is between repackaged batteries sold by Energizer's Authorized Resellers and those sold by [the defendant]." The defendant separates the batteries "into three general categories"—retail, bulk and reseller—and includes pictures of products offered by authorized distributors that are not included in the amended complaint. (ECF No. 34-

8

1 at 5-6, 8-12.) Although this argument might be successful at the summary judgment stage, it is not persuasive at this stage because it is based on information not included in the amended complaint. *See Abbott Lab'ys*, 2017 WL 6014330, at *4-5 ("Defendants' core assertion that online purchasers, who in some sense know that they are not going to receive 'the usual packaging,' would consider all of the undisputed differences between the domestic and international packages immaterial is unpersuasive. . . . In any event, even assuming that they are accurate, defendants' assertions regarding their consumers' expectations and practices are outside the pleadings and are not amendable to judicial notice. The Court therefore may not consider these alleged facts on a 12(b)(6) motion.").

The defendant also argues that anonymous reviews are not a "substitute" for factual allegations. Courts, however, have found that similar reviews are sufficient at the pleading and preliminary injunction stages. *See CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 155 (E.D.N.Y. 2011) ("Plaintiff has put forth some evidence of confusion, even at this early stage in the action. For example, the record contains numerous customer reviews from Amazon.com that indicate that some consumers purchased defendants' product under the false impression that they were purchasing plaintiffs' . . . product."); *PopSockets LLC v. Wilcox*, No. 19-CV-1080, 2019 WL 5741328, at *8 (D. Colo. Nov. 4, 2019) ("In support of their allegations, Plaintiff includes reviews of customers claiming the products they purchased were defective, poor quality, and falsely stated the products came with a warranty. Taking the allegations as true for this analysis, the Court finds Plaintiff has sufficiently alleged that the material difference exception applies to overcome the 'first sale' doctrine."), *report and recommendation adopted*, 2019 WL 7047309 (D. Colo. Dec. 23, 2019), *appeal dismissed*, No. 19-1489, 2020 WL 3545172 (10th Cir. Jan. 24, 2020). Moreover, the complaint includes more than just anonymous reviews;

9

as discussed above, the plaintiff has alleged a variety of differences, and includes the reviews to show that at least some consumers were confused or dissatisfied by these differences. Of course, the Court does not accept the reviews as conclusive proof that there were in fact differences that were material; that is an issue for a later stage of the proceedings.

In sum, the plaintiff has alleged material differences. Accordingly, it has sufficiently alleged trademark infringement and false designation of origin claims under 15 U.S.C. §§ 1114 and 1125(a).

## CONCLUSION

For the reasons stated above, I deny the defendant's motion to dismiss the amended complaint.

**SO ORDERED.**

       s/Ann M. Donnelly
       ANN M. DONNELLY
       United States District Judge

Dated: Brooklyn, New York
       March 29, 2021